## Wytheville.

ANNIE M. HICKMAN, ET ALS. V. W. BARRETT HICKMAN,
EXECUTOR OF SHEPARD G. HICKMAN, ETC.

June 18, 1931.

Present, Prentis, C. J., and Campbell, Holt, Gregory and Browning, JJ.

The opinion states the case.

*Stewart K. Powell,* for the appellants.

*Gunter & Gunter* and *J. Harry Rew,* for the appellee.

BROWNING, J., delivered the opinion of the court.

This suit involves the construction of the last will and testament of Shepard G. Hickman, who was a resident of the

county of Accomac, and who died there in December, 1928, leaving surviving him his widow, Annie M. Hickman, and three children, W. Barrett Hickman, Eva Hickman Gill and Carrie Hickman Bundick, and his said widow and said three children were the sole legatees and devisees. His son, W. Barrett Hickman, and son-in-law, Norman L. Bundick, were named as his executors and they qualified as such.

W. Barrett Hickman instituted a suit in chancery, as such executor and in his own right, praying the court to construe the said will, alleging that certain of its clauses and provisions were uncertain and indefinite.

We here set out the said will in full:

"In the name of God? Amen:

"I, Shepard G. Hickman, of Modest Town, Virginia, do make this my last will and testament, as follows:

"1st. I desire that all my just and honest debts, if any, be paid as soon after my death as possible.

"2nd. At the death of my wife, Annie M. Hickman, I give and devise, in fee simple, unto my son W. Barrett Hickman, and daughter Eva Hickman Gill, my home place known as the 'Baker farm' and the 'Hettie Shreaves woodsland,' containing in all twenty-three acres by estimation, my said wife to receive one-third of all rents from said land during her life.

"3rd. I give and devise, in fee simple, unto my daughter Carrie Hickman Bundick the 'William T. Shreaves farm,' at the death of my wife Annie M. Hickman, who is to receive one-third of all rents from said place during her life.

"4th. I give and devise unto my son W. Barrett Hickman the 'Modest Town school house lot' which I purchased at public auction in the year 1926.

"5th. I desire that all my cash and bonds, after paying my debts, if any, and the expense of carrying this will into effect, be divided, equally, between my wife, Annie M. Hickman, my son, W. Barrett Hickman, and my daughter, Eva Hickman

Gill, and my daughter, Carrie Hickman Bundick, each to receive one-fourth of same.

"6th. I give and devise unto my beloved wife, Annie M. Hickman, the remainder of my personal estate consisting of stocks, household kitchen furniture, farming implements and etc.

"7th. I hereby appoint my son, W. Barrett Hickman, and my son-in-law, Norman L. Bundick, executors, of this my will.

"8th. I desire that my estate be settled without sale either public or private.

"Witness my hand this the 28th day of August, A. D. 1928.

his

"SHEPARD G. X HICKMAN."

mark

This will was witnessed according to law.

Annie M. Hickman, the widow, answered the said bill and particularly the following question propounded therein, to-wit: "What estate under said will does the widow, Annie M. Hickman, and children, W. Barrett Hickman, Eva Hickman Gill and Carrie Hickman Bundick, take, respectively, in and to real estate devised by said will, and to whom do the rents and profits accruing from said real estate legally and properly belong?" Her claim and contention was that she was entitled to an estate for life in the real estate devised to certain children by the testator in the second and third clauses of his will.

Eva Hickman Gill filed her separate answer to the said bill, taking the same position as to the meaning of her father's will that her mother had taken, alleging that such was the intention of the testator.

Norman L. Bundick and Carrie Hickman Bundick filed their answer, alleging that the intention of the testator was that Annie M. Hickman, his widow, was to receive one-third of all the rents and profits in the said real estate and no more.

On the thirty-first day of October, 1929, the court entered

its final decree by which it held that the testator intended by the second clause of his will to give to his son, W. Barrett Hickman, and his daughter, Eva Hickman Gill, his "home place," known as the "Baker farm" and the "Hettie Shreaves woodsland," containing in all twenty-three acres by estimation, in fee simple, but the said W. Barrett Hickman and Eva Hickman Gill were to pay to testator's widow, Annie M. Hickman, during her life one-third of all the said rents from the said farm; and by the third clause of said will he devised unto Carrie H. Bundick, in fee simple, the "William T. Shreaves farm," subject to the payment to the widow during her natural life of one-third of all rents from said place, and by the terms of the said decree effectuated such construction.

From this decree an appeal was allowed by this court to the appellant.

Thus it becomes our duty to construe the said will and particularly to say what the legal effect and intendment is of clauses two and three thereof.

The said Shepard G. Hickman died seized and possessed of a considerable estate, consisting of personal property and real estate. His personal property amounted to in excess of $35,-000.00. The cash and bonds, after the payment of his debts, if any, and the expense of carrying his will into effect, he divided equally among his wife, Annie M. Hickman, and three children. By the sixth clause of his will he devised to his wife the remainder of his "personal estate, consisting of stocks, household kitchen furniture, farming implements, etc." And by the eighth clause he expressed his desire that his estate might be settled without sale either public or private.

In the construction of wills the primary thing to do, as has been held by the cases from this and all other jurisdictions, as far as we know, which is accentuated by the text-writers, is to find what the intention was of the person making the will, and that is to be arrived at by giving effect to the will in its entirety, reading it as a whole and reconciling all of its clauses,

if fairly possible to do so, in the light of the language used and to give effect to every part of the instrument, provided sensible effect can be given not inconsistent with the general intent.

The second clause of the said will is in these words:

"2nd. At the death of my wife, Annie M. Hickman, I give and devise, in fee simple, unto my son, W. Barrett Hickman, and daughter, Eva Hickman Gill, my home place known as the 'Baker farm' and the 'Hattie Shreaves woodsland,' consisting in all twenty-three acres by estimation, my said wife to receive one-third of all rents from said land during her life."

The third clause is as follows:

"3rd. I give and devise, in fee simple, unto my daughter, Carrie Hickman Bundick, the 'William T. Shreaves farm,' at the death of my wife, Annie M. Hickman, who is to receive one-third of all rents from said place during her life."

It is to our minds manifest that the devise, in fee simple, of the lands, which are the subject of the second clause, to his son and daughter, is significantly qualified by the words at the very beginning of the clause "at the death of my wife." That the fee simple estate to the said children did not vest in them immediately, but could only vest at the death of his wife, Annie M. Hickman. If this is so, and we think it must be, what becomes of the said lands during the lifetime of Annie M. Hickman. Surely it was not the intention of the testator that an important part of his estate should be without control and management—under the care of no one—no one to enjoy the benefits of its possession. He did not give it to his son and daughter. He did not say they were to have it. The estate given them was the fee simple in said lands, but not until the death of his wife. This interpretation and construction of the meaning of the words is not, we think, destroyed or weakened by the last words of the clause, which said that his wife was to receive one-third of all rents from said lands during her life.

What we have said has equal application to the third clause. In our judgment, she took a life estate in the said lands, the

full enjoyment thereof, being cut down and lessened to the extent of two-thirds of the rents; in other words, a life estate impaired to the extent of the modification referred to. The estate which she took, as we have described it, is characterized by the authorities as an estate for life by implication. We think that the intention of the testator that his wife should have the right to live at his home and to have the supervision and management of the real estate, included in clauses 2 and 3 of his will, is made manifest by giving proper consideration to clauses 6 and 8 of the said will. Indeed, they throw much light on the matter. Of what use to her were the farm implements if not used in the conduct of the farms. And his expressed wish, as disclosed by the eighth clause, was that his estate be settled without sale either public or private. This quite convincingly evidences the intention of the testator that his farm management and business should be carried on by his wife, even though the rents and profits should be divided, one-third to her and two-thirds to the children.

In 2 Minor's Insts. (3d ed.) 1083, the doctrine is laid down as follows:

"A devise to the testator's heir (but not to a stranger), after the death of the testator's wife, vests a life estate in the wife.

"See 2 Bl. Com. 381, and N. (23)."

In 1 Minor on Real Property (2d ed.), section 193, the author, commenting on this doctrine, says:

"Thus, a devise 'to the testator's heir after the death of testator's wife' vests a life estate in the wife, though no interest be expressly given her. For since the testator's heir is to take only after the wife's death, and the testator has made no express provision for the disposition of the land in the meanwhile, he must have intended that it should go to the wife till her death. Indeed, there is no one else to whom it could go."

In 1 Harrison on Wills and Administration, section 186, the author says:

"The instance of an implied estate which is most frequently used for illustration by the text-writers is the case in which the testator devised to his heirs property after a life estate. It will be observed that the life estate must be implied in the party named in order to give any effect whatever to the words used, because if the life estate is not implied in such person the heir must take possession of it as undisposed of property." See also:

17 R. C. L. 625, where, in dealing with the creation of a life estate by implication, it is said:

"If a devise is made to the testator's heirs, after the death of a person named, there is manifest intention to make an entire disposition of the property which would be defeated if the heirs took immediate possession, and, therefore, the person at whose death the estate to his heirs is to take effect is held to take a life estate by implication."

In the case of *Robinson* v. *Robinson,* 89 Va. 916, 14 S. E. 916, 917, the following clause of the will of the testator was construed:

"I give to my children by her and their descendants *at their death* the remainder of my property," etc. (Italics added.) The court there said: "We think it is too plain for doubt that the testator intended, by the language of the devise, to give to his said infant children, Ashlin and Anthony Robinson, an estate for life, each, in the said remainder of his property, with remainder to the children of the said infant devisees. The words 'at their death' are, as restraining words, fully equivalent to the words 'for life,' and they show clearly the intention of the testator to limit the estate given to the infants to an estate for life. Any other construction would render the words 'at their death' inoperative, insensible and unmeaning."

Judge Fauntleroy bases his conclusion as to the meaning of the words "at their death" upon the case of *Smith* v. *Bell,* 6 Pet. 68, 76, 8 L. Ed. 322. There the testator gave his wife his personal estate "for her own use and benefit and disposal

absolutely, the remainder of said estate, after her decease, to be for the use of the said Jesse Goodwin," the testator's son. Chief Justice Marshall, delivering the opinion of the court in that case, said:

"These words give the remainder of the estate, after his wife's decease, to the son, with as much clearness as the preceding words give the whole estate to his wife. They manifest the intention of the testator to make a future provision for his son as clearly as the first part of the bequest manifests his intention to make an immediate provision for his wife. If the first bequest is to take effect, according to the obvious import of the words taken alone, the last is expunged from the will. The operation of the whole clause will be precisely the same as if the last member of the sentence were stricken out, yet both clauses are equally the words of the testator, are equally binding, and equally claim the attention of those who may construe the will. We are no more at liberty to disregard the last member of the sentence than the first. No rule is better settled than that the whole will is to be taken together, and is to be so construed as to give effect, if it be possible, to the whole. Either the last member of the sentence must be totally rejected, or it must influence the construction of the first so as to restrain the natural meaning of its words; either the bequest to the son must be stricken out, or it must limit the bequest to the wife and confine it to her life. The limitation in remainder shows that, in the opinion of the testator, the previous words had given only an estate for life. This was the sense in which he used them."

"It is impossible to read the will without perceiving a clear intention to give the personal estate to the son after the death of his mother. 'The remainder of the said estate, after her decease, to be for the use of the said Jesse Goodwin.' Had the testator been asked whether he intended to give anything by this bequest to his son, the words of the clause would have

answered the question in as plain terms as our language affords."

To epitomize, we hold that the widow, Annie M. Hickman, takes by implication a life estate in the real estate embraced in the clauses 2 and 3 of the will, charged with the payment of two-thirds of the rents to the children of the testator, namely, W. Barrett Hickman, Eva Hickman Gill, and Carrie Hickman Bundick.

From the foregoing it follows that the decree of the trial court constituted error, and it should be reversed and final decree is now entered in favor of the contention of the appellants.

*Reversed.*