## CIRCUIT COURT OF WARREN COUNTY

F. & M. Bank — Winchester,
Executor and Trustee
of the Estate of
Lillian Mae Foreman Everly

v.

Trustees of the Front Royal
United Methodist Church et al.

November 16, 1994

Case No. (Chancery) 94-131

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on the bill of complaint of F. & M. Bank — Winchester, Executor and Trustee of the Estate of Lillian Mae Foreman Everly, seeking the Court's direction as to whether the estate held by Lillian Mae Foreman Everly at the time of her death, which she received from her husband who predeceased her, was a fee simple interest or a life estate, and as to what the phrase "all of my possessions" used in her husband's will meant.

Upon consideration of the argument of counsel and their memoranda of authorities, the Court has determined that Mrs. Everly had a life estate in the property in question and that the phrase "all of my possessions" included all of Arthur Everly's property of every nature.

### I. *Statement of Material Facts*

The following facts were not in dispute.

Lillian Mae Foreman Everly died on August 4, 1994. At the time of her death, Mrs. Everly was widowed and left one child, Dorothy Mae Everly, born July 18, 1945. By her Last Will and Testament dated February 13,

1991, Mrs. Everly appointed F. & M. Bank — Winchester to be the Executor of her estate and the Trustee of the trust created in that Will for the benefit of her daughter.

At the time of her death, Mrs. Everly was an owner of a parcel of real estate located in the Town of Front Royal, Warren County, Virginia, known as 26 West 12th Street, Front Royal, Virginia 22630, as well as personal property. Mrs. Everly acquired the aforementioned real estate with her husband, Arthur Lynwood Everly, in 1946, as joint tenants without the right of survivorship.

Arthur Lynwood Everly predeceased his wife, and his holographic will, dated August 11, 1949, and admitted to probate on March 4, 1970, provided in its residuary clause that:

> The remainder of all of my possessions be left to my wife Lillian Mae Everly to use for her happiness or as she so desires, and at my wife's death what remains after all of her debts are paid, goes to my adopted daughter Dorothy Mae Everly.

The Executor had asked the Court to construe this bequest to determine whether Mr. Everly left his wife a life estate, a life estate with the absolute power of disposal, or a fee simple interest in all of his possessions. Additionally, the Executor has asked the Court to determine what the term "all of my possessions" means.

## II. Conclusions of Law

As the Supreme Court noted in *Bowles v. Kinsey*, 246 Va. 298, 301-302, 435 S.E.2d 129 (1993):

> The paramount rule of will construction is that the intention of the testator controls, unless such intent is contrary to an established principle of law. *Thomas v. Copenhaver*, 235 Va. 124, 128, 365 S.E.2d 760, 763 (1988); *Powell v. Holland*, 224 Va. 609, 615, 299 S.E.2d 509, 512 (1983). In ascertaining the testator's intent, "a court must examine the will as a whole and give effect, so far as possible, to all its parts." *Thomas*, 235 Va. at 128, 365 S.E.2d at 763.

Mr. Everly used the phrase "all of my possessions" in his residuary bequest to his wife in his will. His will clearly indicates that he intended to dispose of his entire estate. The phrase "all of my property" includes all of his property, real and personal, tangible and intangible. *See Capers v. White*, 195 Va. 1123, 1134, 81 S.E.2d 597 (1954) ("all property which I

own at the hour of my death" means the "whole of his possessions"); and *Coffman's Administrator v. Coffman*, 131 Va. 456, 109 S.E. 454 (1921) (the term "effects" embraced both real and personal property, even while conceding that the word "effects" ordinarily refers to personal property). In the instant case, Mr. Everly's use of the term "all of my possessions" shows a complete testamentary plan by which he intended to give everything he had to his wife, and, at her death if any property was left, it would go to their daughter Dorothy.

"[A] life estate may be created by implication as well as by explicit language." *Edwards v. Bailey*, 227 Va. 224, 229, 315 S.E.2d 196 (1984). "In this case there is no power of disposal in the first takers. It is only when there is such power that a life estate must be express." Section 55-7, Va. Code 1950; *Hall v. Hoak*, 184 Va. 821, 36 S.E.2d 567 (1946); *Moore v. Holbrook*, 175 Va. 471, 9 S.E.2d 447 (1940); *Clarkson v. Bliley*, 185 Va. 82, 38 S.E.2d 22 (1946). *Robinson v. Caldwell*, 200 Va. 353, 356, 105 S.E.2d 852 (1958). *See generally Harrison on Wills and Administration*, § 341 (3d ed. 1986).

No talismanic language is required to create a life estate. *See Robinson v. Caldwell, supra*; and *Horne v. Horne*, 181 Va. 685, 691, 26 S.E.2d 80 (1943). Many wills are written by the testator without the assistance of counsel as was the case with Mr. Everly's will, and the words selected by the testator to dispose of his property reflect the infinite variability of human expression. The case of *Walker v. Clements*, 216 Va. 562, 563, 221 S.E.2d 138 (1976), is highly instructive, because the Supreme Court reviewed the range of phrases used to create life estates. In that case, the will provided:

> I want all my property, real estate, money and bonds to go to my brother, Albert T. Hall, to use as he sees fit. At his death I want what ever is left to be divided equally between my sister, Fannie Walker, and my nephew, Malvin Bernard Horsley. In the event that either is already deceased then I want it all to go to the one left.

Noting that there were clear words of limitation and a gift over, the Supreme Court held that this language created a life estate stating:

> We are not concerned here with *May v. Joynes*, 61 Va. (20 Gratt.) 692 (1871), or with Va. Code § 55-7 because the will of Henrietta M. Lawson did not give Albert T. Hall an express estate for life, coupled with the power of absolute disposition

during his lifetime. Hall either took a life estate or he received a fee simple interest.

The key to the construction of this will is found in the phrase "to use as he sees fit," and in the word "use." The will of Henrietta M. Lawson was not prepared by an attorney. In fact she stipulates therein: "I do not want a lawyer called in to handle this but I want everyone to know that the wishes expressed above are my very own and are to be carried out as stated here." The will is not couched in legal or technical terms. Black's Law Dictionary 1710 (4th ed. 1951), referring to the nontechnical sense of the word "use," says: "The 'use' of a thing means that one is to enjoy, hold, occupy, or have some manner of benefit thereof."

In *Roller v. Shaver*, 178 Va. 467, 474, 17 S.E.2d 419, 423 (1941), we said:

We have said in a number of cases that the word "use" does not import any power of disposition of the corpus — the jus disponendi of the thing used — but its meaning denotes the contrary. This interpretation is expressed in these words: "Indeed only the right to use and enjoy the benefit of the corpus is implied by the word 'use.'" *In re Moor's Estate*, 163 Mich. 353, 128 N.W. [198], 199 (1910). *Hurt v. Hurt*, 121 Va. 413, 422, 93 S.E. 672, 674 (1917); *Taylor v. Taylor*, 176 Va. 413, 11 S.E.2d 587 (1940); *Bristow v. Bristow*, 138 Va. 67, 69, 120 S.E. 859 (1924).

In *Bristow v. Bristow*, 138 Va. 67, 68, 120 S.E. 859 (1924), the wife was given property "to use as she pleases during her life and while she remains my widow." There we held that this did not create a fee simple estate because the duration of the wife's control over the property was specifically limited by the instrument.

*Trustees of Duncan Church v. Ray*, 195 Va. 803, 804, 807, 80 S.E.2d 601, 602, 603 (1954), is distinguishable. There we construed a will wherein the testator requested that his wife "take immediate possession" of all his property, "and every thing that stands in my name." The wife was "to see every thing I may owe, be paid" and "have full control her life time." From an examination of the will and its attending circumstances, we concluded that the testator's wife was his first and foremost concern

and that it was his intention to see that she was fully and amply cared for during her life and "to that end he gave her full control her life time . . . . so that she could use it for her needs or as she saw fit and without any limitation whatsoever."

Appellees also point to *Gardner v. Worrell*, 201 Va. 355, 111 S.E.2d 285 (1959), and *Mowery v. Coffman*, 185 Va. 491, 39 S.E.2d 285 (1946), where in each case the first takers were determined to have acquired fee simple interest. In *Gardner* we held that the intent of the testator was plain and certain. There we found that the clause in controversy gave all the testator's property to his wife; that it specifically provided that she could do as she pleased with it; that she could sell anything she wanted to sell; and that she could make or transfer title to anything that she did sell. We held that this gave the wife unlimited and unrestricted power of absolute disposition and that the limitation over "if there is anything left" was invalid, "being inconsistent with and repugnant to the fee" for "[there] can be no remnant after a fee simple is created." 201 Va. at 356, 111 S.E.2d at 286.

In *Mowery* the clause in controversy devised a wife "all my real and personal estate of any and every kind of which I shall die seised and possessed except as above disposed of with full authority to dispose of any part thereof that she may deem necessary for her support and maintenance." 185 Va. at 492, 39 S.E.2d at 286.

We do not find in the Lawson will, and in the devise to Albert T. Hall, such language as "right of disposition," "possession," or "full control." Instead we have a devise to a brother "to use as he sees fit." By this language Albert T. Hall acquired no greater interest than he would have had had the testatrix given her property to him to "use," or to "use as he desired," or to "use as he wished." The fact remains that the property was given to be used, enjoyed, held and occupied by Albert T. Hall and for Hall to be benefitted by such use. The will did not give Hall the right to sell, give, mortgage, or dispose of as he saw fit. It gave only the right to use as he saw fit.

The second sentence of the devise to Hall is "[at] his death I want what ever is left to be divided equally between my sister, Fannie Walker, and my nephew, Malvin Bernard Horsley." We do not interpret the phrase "what ever is left" as indicating that

Albert T. Hall had theretofore been given the complete right of disposition . . . .

Giving to the word "use" its common and accepted meaning, it is our conclusion that the will of Henrietta M. Lawson created a life estate only in Albert T. Hall. We cannot construe the phrase "to use as he sees fit" to mean "to dispose of as he sees fit." The will contemplated that upon the termination of the life estate created hereby whatever remained "that had not been used," or "what ever was left," would be divided between Fannie Walker and Malvin Bernard Horsley, or the survivor. Albert T. Hall was given the full use and enjoyment of the Lawson property during his lifetime. We hold that this was the intention of the testatrix, and that this intention was expressed by her in the words she chose. In construing the will, we depend upon the language of the testatrix to convey her intent, and such intention, once ascertained, is the governing principle and must prevail unless it violates some rule of law. We know of no rule of law which prevents the intention expressed by the testatrix from being given effect in this case.

*Id.* at 563-564 (emphasis added).

The Virginia Supreme Court has held that "the words 'at their death' are, as restraining words, fully equivalent to the words 'for life,' and they show clearly the intention of the testator to limit the estate . . . to an estate for life." *Robinson v. Robinson*, 89 Va. 916, 918-919, 14 S.E. 916 (1892). Similarly, a gift over to a named beneficiary after the death of a person named, manifests an intention that the first person named takes a life estate by implication. *Hickman v. Hickman*, 156 Va. 659, 159 S.E. 145 (1931).

In the instant case, Mr. Everly used the words "at my wife's death," which shows his intention to limit the devise only for his wife's life. Mr. Everly also used the phrase, "to use for her happiness or as she so desires" without any clearly stated power of disposal. Therefore this language created a life estate in Mrs. Everly. He made a gift over to his daughter, which shows that he wanted both his wife and his daughter to have an interest in his estate.

### III. *Decision*

For the foregoing reasons, it is adjudged that by his will Arthur Lynwood Everly bequeathed a life estate to Lillian Foreman Everly in all of

his property, real and personal, which he owned at the time of his death, with a remainder over to his daughter, Dorothy Mae Everly.