**UNITED STATES of America**

v.

**Gary T. HALL, Defendant.**

**No. 72 Cr. 820.**

United States District Court,
S. D. New York.

July 11, 1977.

Robert B. Fiske, Jr., U. S. Atty., by Rhea Kemble Neugarten, Asst. U. S. Atty., New York City, for United States.

American Civil Liberties Union by Helene M. Freeman, New York City, for defendant.

## MEMORANDUM OPINION

MOTLEY, District Judge.

On July 14, 1972 Gary Hall pleaded guilty to an information charging him with violating 18 U.S.C. §§ 32 and 35 by making threatening telephone calls to Pan American World Airways in which he stated that a bomb would explode aboard its aircraft. On August 14, 1972 Hall was sentenced by this court under the Youth Corrections Act, 18 U.S.C. § 5010(a), as extended by § 4209. Hall was placed on probation for two years subject to the condition that he (1) seek psychiatric help; (2) complete his college education; and (3) find gainful employment.

Hall immediately absconded from probation supervision. About two years later, Hall turned himself in to the probation department when he realized he might be apprehended on a bad check charge. Although Hall had not reported as required, and aside from the bad check charge which was dropped, Hall had on his own made a reasonably satisfactory adjustment. He had settled in a small upstate New York community and had opened a small business. Hall's probation, therefore, was extended an additional year which he successfully completed. He was finally discharged from probation on December 8, 1975. Since the defendant was discharged prior to the maximum period of probation, his conviction was "set aside" pursuant to 18 U.S.C. § 5021(b). (Section 5021 is fully set forth in the margin.) [1]

On February 4, 1976 Hall wrote to the Federal Bureau of Investigation and requested that his arrest and fingerprint rec-

---

1. § 5021. *Certificate setting aside conviction.*

(a) Upon the unconditional discharge by the [United States Parole] Commission of a committed youth offender before the expiration of the maximum sentence imposed upon him, the conviction shall be automatically set aside and the Commission shall issue to the youth offender a certificate to that effect.

(b) Where a youth offender has been placed on probation by the court, the court may thereafter, in its discretion, unconditionally discharge such youth offender from probation prior to the expiration of the maximum period of probation theretofore fixed by the court, which discharge shall automatically set aside the conviction, and the court shall issue to the youth offender a certificate to that effect.

ords be "expunged" from its files.[2] The F.B.I. answered that fingerprint records are official Government records which cannot be destroyed except by court order. It added that its records (accurately) noted that the disposition of Hall's arrest in 1972 is "conviction set aside."

Hall now moves this court to order that the F.B.I. records relating to the arrest and its subsequent history be expunged. Hall does not ask, contrary to his original letter to the F.B.I., that his fingerprint records be expunged. Rather, he only seeks to prevent the dissemination of his arrest record to "thousands of federal, state and local agencies and private businesses for employment, licensing or prosecutorial purposes through the extensive F.B.I. Identification Division and NCIC systems." (Def's Reply Brief, at 8.) The defendant is concerned because aside from the ever-present possibility that his record will be indiscriminately disseminated, there is the fact that the mere existence of a criminal record looms ominously through one's life.

The court is asked to decide two discrete questions: First, is 18 U.S.C. § 5021 an "expunction statute"? In other words, if a defendant's conviction is duly "set aside" pursuant to that section, does that section implicitly authorize the court to order the F.B.I. to erase all evidence of the proceedings from its files? Second, if such "expunction" is not so authorized, does the district judge have the inherent power to order such expunction in an appropriate case in order to further the purpose of the Act? If so, is such equitable relief appropriate in this case?

## DISCUSSION

### Background

■ There can be no doubt about Congress' intent in enacting the Youth Corrections Act and especially Section 5021. As confirmed by the legislative history (H.R. Rep. No. 2979, 81st Cong., 2d Sess., 1950 U.S.Code Cong.Serv. 3983), the cases are

unanimous that its goal is the rehabilitation of the young persons in this country who have made their first mistake, so to speak. The purpose of Section 5021's "setting aside" provision is to give these eligible defendants a "second chance, free of *all* taint of a conviction." *Mestre Morera v. United States Immigration and Naturalization Service*, 462 F.2d 1030, 1032 (1st Cir. 1972) (emphasis in original). *See generally Dorszynski v. United States*, 418 U.S. 424, 432–34, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974).

Given the undisputed fact that the Act is a statute clearly aimed at the rehabilitation of young offenders, it is but a small step to argue that Section 5021 is an expunction statute. The evils of a criminal record are well known. The convicted are forever branded as untrustworthy members of society. Their job prospects are permanently compromised; they are often the subject of suspicion and mistrust. The District of Columbia Circuit alluded to this grave problem when it said that "a person sentenced under the Youth Corrections Act can, by virtue of his own good conduct, be spared the lifelong burden of a criminal record." *Tatum v. United States*, 114 U.S.App.D.C. 49, 51, 310 F.2d 854, 856 (1962). That Circuit further elucidated the evils attached to a criminal record in a later opinion, *Menard v. Mitchell*, 139 U.S.App.D.C. 113, 430 F.2d 486, 490–91 (1970):

> Even if no direct economic loss is involved, the injury to an individual's reputation may be substantial. Economic losses themselves may be both direct and serious. Opportunities for schooling, employment, or professional licenses may be restricted or nonexistent as a consequence of the mere fact of an arrest, even *if followed by acquittal or complete exoneration of the charges involved.* An arrest record may be used by the police in determining whether subsequently to arrest the individual concerned, or whether to exercise their discretion to bring formal charges against an individual already

---

2. The word is in quotation marks because it appears that the courts have given it varying meanings. For example, the conviction in the

abstract may be "expunged", or, as requested here, the actual F.B.I. records may be "expunged", i. e., destroyed.

arrested. Arrest records have been used in deciding whether to allow a defendant to present his story without impeachment by prior convictions, and as a basis for denying release prior to trial or an appeal; or they may be considered by a judge in determining the sentence to be given a convicted offender. (Footnotes omitted and emphasis added).

The hardships attendant on a criminal record have been recognized by the courts and the commentators alike. *See, e. g., Utz v. Cullinane,* 172 U.S.App.D.C. 67, 79–80, 520 F.2d 467, 479–80 (1975); A. R. Gough, "The Expungement of Adjudication Records of Juveniles and Adult Offenders: A Problem of Status," 1966 Wash.U.Law.Q. 147, 153–59.

Hall, of course, argues that an F.B.I. notation which reads "conviction set aside" is ineffectual in giving him that "second chance, free of all taint of conviction." This court agrees. Such a record would likely inspire little more confidence than if it stated "convicted". Only the most sophisticated and the most sympathetic members of today's society can be expected to view such a fact without reservation. To the uninitiated, such a notation *may* even appear to mean that the defendant was not found guilty. However, even if this were true, *Menard v. Mitchell* correctly points out that a record of acquittal may prejudice the innocent.

Hall argues further that, despite the fact that dissemination of F.B.I. records is supposedly under rigorous control, mistakes do occur, and his record may be revealed to unauthorized parties. The court cannot discount this argument in light of our recent lamentable history of widespread and uncontrolled domestic surveillance and record keeping.

Hall's argument thus boils down to the simple proposition that, since expunction of his F.B.I. records would further the rehabilitative purposes of the Act, then the Act should be read as requiring such expunction.

*The Case Law*

This court is aware of only two other courts which have dealt specifically with the question whether Section 5021 should be read to require the expunction of defendant's F.B.I. records. Both courts have held that Section 5021 is not an expunction statute. *United States v. McMains,* 540 F.2d 387 (8th Cir. 1976); *Fite v. Retail Credit Co.,* 386 F.Supp. 1045 (D.Mont.1975), *aff'd* 537 F.2d 384 (9th Cir. 1976).

In response, plaintiff cites cases which contain language to the effect that Section 5021 is an expunction statute. However, none of these cases dealt with the specific expunction issue in this case. For example, in *United States v. Fryer,* 402 F.Supp. 831 (N.D.Ohio 1975), *aff'd* 545 F.2d 11 (6th Cir. 1976), defendant was charged with violating 18 U.S.C.App. § 1202(a) (unlawful receipt or possession in interstate commerce by a convicted felon of a firearm). One element of that offense is thus a prior felony conviction. Although the defendant had been convicted of a felony earlier, that conviction was set aside pursuant to Section 5021(b). The district court in *Fryer* (at 837) held that

once a conviction has been set aside pursuant to § 5021, *it is expunged from the defendant's record for all purposes* and may not later be used to convict someone of violating a statute which requires as an essential element of the offense a prior felony conviction. (Emphasis added)

That court held that the conviction was expunged for "all purposes", but the question of F.B.I. records and the legitimate use of these records for law enforcement purposes was not before the court.

In dictum, *United States v. Glasgow,* 398 F.Supp. 217, 224 n.17 (D.D.C.1975) said: "In order to effectuate the purposes of the Youth Corrections Act, the court, under its inherent powers as an Article III court having equitable jurisdiction may, in the appropriate situation, order the expungement and sealing of the offender's records." Even this dictum, of course, does not say that Section 5021 is an "expunction statute" per se. *See also United States v. Roberts,*

515 F.2d 642, 644 (2d Cir. 1975) (one of the advantages of sentencing under the Act is the "opportunity to have the conviction erased from [a defendant's] record . . .") (dictum). *See also* J. L. Schaefer, "The Federal Youth Corrections Act: The Purposes and Uses of Vacating the Conviction," Sep. 1975 Fed. Probation 31, 34 ("Section 5021 does not restore rights, it expunges the conviction").

Aside from the fact that two circuits have held that Section 5021 is not an expunction statute, this court has little guidance in interpreting the statute. Both the Government and defendant agree that the Second Circuit has provided no guidelines as to how convictions which were set aside should be recorded by the F.B.I. The legislative history with respect to the Act is ambiguous on the expungement question. *See McMains, supra* at 389 and *Fryer, supra* at 835–36. The language of the Act, itself, is, of course, silent on the question of whether a conviction which is set aside should result in the expunction of the relevant records.

Before considering whether Congress, *sub silentio*, intended that the Act would provide for expunction, it is necessary to briefly examine the disadvantages connected with expunction. Under 28 U.S.C. § 534, the Attorney General is obligated to collect and classify criminal records *and* to "exchange these records with, and for the official use of, authorized officials of the Federal Government, the States, cities, and penal and other institutions." *See generally*, 28 C.F.R. §§ 20.30, *et seq.* and *Menard v. Saxbe*, 162 U.S.App.D.C. 284, 498 F.2d 1017 (1974). These records are used for numerous legitimate purposes such as investigative work by federal and state law enforcement authorities, and the records are also available to federal, state and local agencies for employment and licensing purposes. From the defendant's point of view, the use of his criminal record can only be to his detriment. However, it must be noted that Congress has specifically provided for the (strictly controlled) dissemination of criminal records with the understanding that such dissemination would serve the public

welfare in general. *Utz v. Cullinane*, 172 U.S.App.D.C. 67, 79, 520 F.2d 467, 479 (1975); *United States v. Dooley*, 364 F.Supp. 75, 77 (E.D.Pa.1973); *United States v. Linn*, 513 F.2d 925, 927 (10th Cir.), *cert. denied*, 423 U.S. 836, 96 S.Ct. 63, 46 L.Ed.2d 55 (1975). As recently as December 15, 1971 (the Youth Corrections Act was enacted in 1950) Congress specifically provided for the exchange of F.B.I. records with federally chartered and insured banks and with state and local governments for employment and licensing purposes. Pub.L. No. 92–184, § 902, 85 Stat. 627. *Utz v. Cullinane, supra* at 477, notes that § 902 was passed in response to *Menard v. Mitchell*, 328 F.Supp. 718, 727 (D.D.C.1971), *rev'd and remanded*, 162 U.S.App.D.C. 284, 498 F.2d 1017 (1974), which held that the F.B.I. was without statutory power to distribute its records outside the Federal Government.

■ While expunction is not explicit in the Youth Corrections Act, Congress *has* specifically provided for expunction or sealing in other instances. Title 18 U.S.C. § 5038 provides for the sealing of juvenile records: Title 21 U.S.C. § 844(b)(2) specifically provides that certain persons charged with the possession of a controlled substance "may apply to the court for an order to expunge from all official records . . all recordation relating to his arrest, indictment or information, trial, finding of guilty, and dismissal and discharge pursuant to this section." It is thus clear that Congress is aware of the beneficial use of expunction. Its omission of the expunction alternative in Section 5021 is, therefore, significant.

It can not be argued that the Act serves little purpose if a defendant's record is not expunged in addition to being set aside. The courts have held that the act of "setting aside" a conviction is more beneficial to the defendant than a Presidential pardon since the former " 'releases the offender from all disabilities imposed by the offense, and restores him [to] all his civil rights.' *Knote v. United States*, 95 U.S. 149, 153, 24 L.Ed. 442 (1877)." *Tatum v. United States*, 114 U.S.App.D.C. 49, 51, 310 F.2d 854, 856

(1962). For all "legal" purposes, the defendant no longer has a criminal "record" and can resume his life anew without the stigma of a conviction. While it is true that the elimination of *any* record from the F.B.I. files would contribute to this "fresh start", that would be but an additional (albeit perfectly reasonable) benefit to the setting aside of the conviction.

A strong argument against reading expunction into the statute is that a person whose conviction is set aside and then expunged under § 5021 would be in a better position than a young adult offender who was acquitted of the charges against him. Realistically, even a record of acquittal can be a silent impediment in one's search for employment. Moreover, a record of acquittal may mark the acquitted as a suspect in the eyes of police investigators with respect to similar offenses. This court cannot assume that Congress impliedly included expunction in Section 5021 in view of these realities.

There is some affirmative evidence that Section 5021 is not an expunction statute. That statute provides that when a defendant's conviction is set aside, the defendant shall receive a certificate to that effect. If the records of that conviction were expunged, then such a certificate would, arguably, be unnecessary. It is of some note that neither of the other two expunction statutes (18 U.S.C. § 5038 and 21 U.S.C. § 844(b)(2) ) provide for such a certificate.

■ In conclusion, the court finds that there are valid reasons why Congress might not provide for the expunction of records even after the conviction has been set aside. Expunction is a strong remedy and may and should be used "in order to preserve basic legal rights." *Menard v. Saxbe, supra*, 162 U.S.App.D.C. at 290, 498 F.2d at 1023, citing *Sullivan v. Murphy*, 156 U.S. App.D.C. 28, 58, 478 F.2d 938, 968, *cert. denied*, 414 U.S. 880, 94 S.Ct. 162, 38 L.Ed.2d 125 (1973). However, "[t]he power is a narrow one, usually exercised in cases of illegal prosecution or acquittals and is not to be routinely used." *McMains, supra* at 390 and cases cited therein. This court

feels constrained to hold that, despite the acknowledged fact that expunction would further the purposes of the Act, Section 5021 cannot be interpreted as an expunction statute without more explicit guidance from Congress. *See especially United States v. Dooley, supra* at 78.

*Equitable Discretion*

■ This court notes the dictum in *Glasgow, supra* at 224 n.17, to the effect that a district court has the inherent power to expunge a criminal record if, in the particular case, expunction would further the purposes of the Youth Corrections Act. The basic power to expunge is clearly established; *Menard v. Saxbe, supra* ; *McMains, supra*, although, as previously noted, the power is limited. The court has fully reviewed the presentence report, probation reports, and facts of this case and concludes that such limited power recognized in *Glasgow, supra*, should not be exercised under the facts of this case.