**UNITED STATES of America,**

v.

**Thomas A. HENDERSON.**

**Crim. No. 162–62.**

United States District Court,
D. New Jersey.

Dec. 28, 1979.

Robert J. Del Tufo, U. S. Atty. by Robert S. Steinbaum, Asst. U. S. Atty., Newark, N. J., for United States.

Thomas A. Henderson, pro se.

Carl H. Imlay, Washington, D. C., amicus curiae Gen. Counsel, Administrative Office

of the United States Courts by Judd D. Kutcher, Asst. Gen. Counsel, Washington, D. C.

### OPINION

COHEN, Senior District Judge:

Called into question here are the interpretation and effect of section 5021 of the Federal Youth Corrections Act, 18 U.S.C. §§ 5005–5026 (the Act), relating to the expungement of a youth's criminal record.

On August 13, 1962, Thomas A. Henderson was convicted, following his guilty plea, of taking $100.00 from the United States mails in violation of 18 U.S.C. § 1709. The sentencing judge, Honorable Thomas M. Madden, deceased, suspended imposition of sentence and, pursuant to the Act, placed Henderson on probation for three years. On December 21, 1964, Henderson was discharged from probation, automatically "setting aside" the conviction under 18 U.S.C. § 5021(b).[1] Judge Madden subsequently issued to the youth offender a certificate to that effect.

In the early part of 1979, the United States Probation Office, District of New Jersey, was notified by Henderson that, despite the certificate, he was having difficulty finding suitable employment. Henderson attributed this difficulty to the existence of his criminal record, which consists solely of the 1962 arrest and conviction. In response to Henderson's request, the Probation Office made *ex parte* application to the Court for an order of expunction. On May 10, 1979, this Court, after due consideration and upon the recommendation of the United States Probation Office, ordered "an expunction of all records relative to [Henderson's] arrest and conviction to achieve the purposes of the Youth Corrections Act."

The United States Attorney now seeks reconsideration and vacation of the May 10, 1979 Order.

The issue presented here is whether the "set aside" provision of the Act, 18 U.S.C. § 5021, authorizes, by implication, expungement of all records relative to a youth offender's arrest and conviction. It should be noted that the Third Circuit Court of Appeals has yet to deal with this precise question.

The United States Attorney asserts that the Act in no way empowers this Court to order the destruction or "expunction" of records concerning a conviction which has been "set aside." He further maintains that the Court's equitable power with respect to expungement is very narrow, and that the facts of this case do not warrant such a rare remedy.

The Administrative Office of the United States Courts (Administrative Office), which provides legal advice to all federal probation officers, urges in its brief as *amicus curiae* that Henderson, as a youth sentenced under the Act, should have the records of his arrest and conviction expunged pursuant to the implicit requirement of 18 U.S.C. § 5021. The Administrative Office contends that the "set aside" phrase within section 5021 should be interpreted as an expungement provision, and that the word "conviction" as used in that statutory phrase should be understood to encompass the entire record of the youth's criminal act, from the arrest to the sentence. Alternatively, the Administrative Office contends that the arrest and conviction record should be expunged pursuant to the Court's inherent equitable powers used in conjunction with section 5021.

For the following reasons, this Court holds that a youth offender who satisfies the requirements of section 5021 of the Act shall have the records of his or her arrest and conviction expunged in the manner set forth in Section IV, *infra*, of this opinion.

---

1. The pertinent portion of 18 U.S.C. § 5021 reads in full:

    (b) Where a youth offender has been placed on probation by the court, the court may thereafter, in its discretion, unconditionally discharge such youth offender from probation pri-

or to the expiration of the maximum period of probation theretofore fixed by the court, *which discharge shall automatically set aside the conviction,* and the court shall issue to the youth offender a certificate to that effect. (emphasis supplied).

## I.

Judicial interpretation of the Act has been limited, and has yielded contrary interpretations regarding the status of a youth offender whose conviction has been "set aside" pursuant to section 5021. For example, determining that the purpose of section 5021's "setting aside" provision is to give eligible defendants a "second chance, free of *all* taint of a conviction" (emphasis in original), the First Circuit has held that an alien whose conviction is "set aside" pursuant to the section may not be deported on the basis of that conviction. *Mestre Morera v. United States Immigration & Naturalization Service*, 462 F.2d 1030, 1032 (1st Cir. 1972). This position was rejected in *Hernandez-Valensuela v. Rosenberg*, 304 F.2d 639 (9th Cir. 1962), which held that a person whose conviction was still subject to discharge under section 5021 could be deported on the basis of the conviction. *Id.* at 640. Similarly, in *Garcia-Gonzales v. United States Immigration and Naturalization Service*, 344 F.2d 804 (9th Cir. 1965), the court held that an analogous California "set aside" provision could not be raised to bar deportation. That court stated: "[i]t is sheer fiction to say that the conviction is 'wiped out' or 'expunged'. What the statute does is reward the convict for good behavior during probation by releasing certain penalties and disabilities." *Id.* at 808. Although these cases are not directly applicable under the present facts, they do illustrate the divergence of judicial opinion as to the effect of the Act on a convicted youth whose conviction has been set aside.

The few courts which have dealt directly with the specific question of whether section 5021 implicitly provides an expungement remedy are also in conflict. The dicta of several decisions has suggested that section 5021 should be read as an expungement

provision so that the statutory purposes of the Act will be fulfilled. *See United States v. Fryer*, 545 F.2d 11, 13 (6th Cir. 1976);[2] *United States v. Dancy*, 166 U.S.App.D.C. 399, 402 n. 11, 510 F.2d 779, 782 n. 11 (D.C. Cir. 1975); *Tatum v. United States*, 114 U.S.App.D.C. 49, 51 n. 2, 310 F.2d 854, 856 n. 2 (D.C. Cir. 1962); *United States v. Glasgow*, 389 F.Supp. 217, 224 n. 17 (D.D.C. 1975). Nevertheless, most courts which have holdings directly on point have refused to treat section 5021 as an expungement provision. *See United States v. Doe*, 556 F.2d 391, 393 (6th Cir. 1977); *United States v. McMains*, 540 F.2d 387, 389 (8th Cir. 1976); *United States v. Hall*, 452 F.Supp. 1008, 1012 (S.D.N.Y.1977); *Fite v. Retail Credit Company*, 386 F.Supp. 1045, 1047 (D.Mont.1975), *aff'd*, 537 F.2d 384 (9th Cir. 1976). The decision in *United States v. McMains* is exemplary of these decisions. There, the Eighth Circuit Court of Appeals held that the Act

does not authorize expunction of the record of a conviction which has been set aside pursuant to section 5021. First, the language of section 5021 does not plainly provide for record expunction. We are confident that had Congress intended to authorize expunction, it would have manifested that intent with far greater clarity. It has done so on other occasions. *See* 21 U.S.C. § 844(b)(2). Second, the fact that section 5021 provides for the issuance of a certificate to the offender upon the setting aside of his conviction militates against a construction favoring expunction. Had Congress intended to provide for complete eradication of the offender's criminal record, such a certificate would seem unnecessary. Third, it would be incongruous to infer a statutory right to expunge a conviction when there

**2.** However, the Sixth Circuit Court of Appeals has since ruled that the Act " 'does not authorize expunction of the record of a conviction which has been set aside pursuant to section 5021.' " *United States v. Doe*, 556 F.2d 391, 393 (6th Cir. 1977) quoting *United States v. McMains*, 540 F.2d 387, 389 (8th Cir. 1976). It was apparently critical to Doe's decision that "there is no provision in the Act which authorizes or requires obliteration of the court record of conviction." 556 F.2d at 393. Today's opinion is not necessarily in conflict with that finding since Henderson's arrest and conviction records will not be totally obliterated, but will be maintained for specific, limited purposes which are in keeping with the intent of the Act. *See* Section IV, *infra*.

is no statutory right, in most cases, to expunge the record of an arrest that does not result in a prosecution.

540 F.2d at 389.

In the most recent circuit court decision on point, the District of Columbia Circuit (D.C. Circuit) disagreed with the majority of the prior decisions, and concluded that the Act requires the expungement of a youthful offender's conviction record in appropriate cases. In *Doe v. Webster*, 196 U.S.App.D.C. 319, 606 F.2d 1226 (D.C.Cir. 1979), the court, in an erudite and comprehensive opinion, recognized that the "primary concern" of the authors of the Act was to release the rehabilitated youth offender from the "social stigma and loss of economic opportunity that in this society accompany the 'ex-con' label." *Id.*, 196 U.S. App.D.C. at 327, 606 F.2d at 1234. The court observed:

> While the legislative history offers little guidance as to the reasoning behind the drafters' choice of terminology, it is crystal-clear in one respect: they intended to give youthful ex-offenders a fresh start, free from the stain of a criminal conviction, and an opportunity to clean their slates to afford them a second chance, in terms of both jobs and standing in the community.

*Id.*

After analyzing the legislative history of the Act, and noting that other circuits have also emphasized "both the rehabilitative aspects of the Act and its purpose to provide youthful ex-offenders a fresh start," *id.*, 196 U.S.App.D.C. at 329, 606 F.2d at 1236, the Webster court succinctly reasoned:

> It is clear that if these purposes of the Act are to be effectuated, the set-aside provision must be accorded a liberal construction which allows the rehabilitated youthful offender a meaningful fresh start by protecting him from those 'stigma' consequences of his conviction which impede his reintegration into society, as distinguished from an interpretation which grudgingly focuses only on the removal of 'legal' disabilities which are of more limited value to the youthful ex-of-

fender seeking to reestablish a useful, productive, and law-abiding life.

*Id.*, 196 U.S.App.D.C. at 331, 606 F.2d at 1238.

This Court must agree with the reasoning expressed by the D.C. Circuit. Generally, imposition of sentence and its overseeing is the most agonizing duty of a district court. The court not only imposes a sentence, it also has the power to reduce, vacate or modify that sentence, to make recommendations to the parole board and to make recommendations for the grant of a Presidential pardon. At sentencing, the court has the benefit of a comprehensive presentence report and the continuing guidance and consultation of the United States Probation Department. Even more agonizing is the sentencing of a youth offender. Where the court determines, upon recommendation by the Probation Department and upon its own painstaking evaluation of the circumstances, that a youth offender should be unconditionally discharged from probation prior to the expiration date set by the sentencing court, thereby triggering the "set aside" provision of section 5021, no justifiable reason exists why that individual should be scarred for the rest of his or her life with a police record and a criminal conviction. Such is a source of social embarrassment, lack of employment opportunity and psychological harm not within the intent of the Act.

The United States Attorney contends that had Congress meant to provide an expungement remedy in the Act, it would have expressly done so, as it had in the drug possession statute, 21 U.S.C. § 844(b)(2). The *Webster* court was also confronted with this argument. There the D.C. Circuit noted that

> The Federal Youth Corrections Act was enacted in 1950, long before the term "expungement" gained general currency. There is no reason to suppose that when Congress in 1950 spoke of setting aside a conviction, it consciously and deliberately intended to distinguish that concept from expungement. The contrary conclusion is far more plausible: that prior to the time

the term "expungement" became fashionable, Congress meant precisely that when it directed conviction records be set aside upon the rehabilitation of the youthful offender.

*Webster,* 196 U.S.App.D.C. at 326, 606 F.2d at 1233 (footnotes omitted). But the United States Attorney, in his Supplemental Brief in Support of the Motion for Reconsideration of the Order, disagrees with the *Webster* finding. He argues that the term "expungement" was in "currency" in 1950, and in support of this proposition he cites the case *Andrews v. Police Court of Stockton,* 123 P.2d 128, 129 (Cal.App.1942), aff'd 21 Cal.2d 479, 133 P.2d 398 (1943),[3] which used the term "expunge."[4]

This argument is not convincing. It has never been suggested that the word "expunge" did not exist in 1950. *Webster,* and this Court, are concerned with whether Congress would have used that term in a statute in 1950 even if that were the intended remedy. Therefore, looking to the historical use of the term expungement in statutory language is far more instructive than is looking to the use of the term by various courts. Upon careful review, we

are unaware of any federal statute enacted prior to 1950 which uses the term "expunge." In fact, while the term "expunge" may have recently gained general currency in federal statutes, as evidenced by its usage in 21 U.S.C. § 844(b)(2) (1970), its debut in the United States Code came sixteen years after the enactment of the Youth Corrections Act. *See* 18 U.S.C. § 4251(e) (1966); 28 U.S.C. § 2901(f) (1966). Thus, the absence of the term "expungement" within the Act is not necessarily indicative of Congressional intent. Its legislative history, as reflected by the comments of the draftsmen themselves, bears out this point.[5]

The Youth Corrections Act was originally drafted in a report of a special committee of federal judges, appointed by Chief Justice Harlan F. Stone in 1941, to study the problem of criminal correction in the federal courts. The statement of Chief Judge Bolitha J. Laws of the United States District Court for the District of Columbia is illustrative of the prevailing attitude of the drafters. Judge Laws stated that "[c]ommitted youth offenders who earn their final discharge before the end of their maximum

---

**3.** See also the related case *Andrews v. Superior Court of San Joaquin County,* 29 Cal.2d 208, 174 P.2d 313 (1946).

**4.** It is certainly conceded that the word "expunge", or some derivative thereof, was used in court decisions prior to 1950. Undoubtedly, the number of such decisions would reach the hundreds or thousands. Upon brief investigation, this Court found nearly fifty instances where the highest court of an individual state used a form of the word "expunge." However, in most instances, the word's usage was far removed from the context of a criminal conviction. *See Temple v. Clinton Trust Co.,* 1 N.J. 219, 62 A.2d 690 (1948) (denied expungement of a portion of an attorney's brief); *People v. Hardy,* 33 Cal.2d 52, 198 P.2d 865 (1948) (testimony expunged from a court record during trial); *Hesker v. Shaffer,* 394 Ill. 489, 68 N.E.2d 612 (1946) (decree to be issued to have certain words expunged from a deed); *People ex rel. Kula v. O'Connell,* 394 Ill. 409, 68 N.E.2d 758 (1946) (petition for mandamus *to expunge probate of will* was properly stricken); *Hickman v. Hickman,* 156 Va. 659, 159 S.E. 145 (1931) (effectuation of one bequest expunges another). And nowhere did this Court find a state court referring to a statute which used the word "expunge."

It is interesting to note that the state decision which most closely resembled the case at bar appears to have used the terms "expunge" and "set aside" interchangeably. *Matter of Bojinoff v. People,* 299 N.Y. 145, 85 N.E.2d 909 (1949) was a criminal case before the Court of Appeals of the State of New York, that state's highest court. There, petitioner brought a writ of *coram nobis* to "expunge from the records of [a trial court] two prior judgments of conviction." *Id.* at 148, 85 N.E.2d at 910. The Court of Appeals reversed the decision of the lower courts which denied relief to the petitioner stating: "[t]he orders should be reversed and the matter remitted to the Monroe County Court with directions to vacate and *set aside* the [prior] convictions." *Id.* at 152, 85 N.E.2d at 912. (emphasis supplied).

**5.** As *Webster* correctly points out, "there *are no* statements by legislators in the legislative history of section 5021(b) which shed any light on the interpretation to be accorded the set-aside provision." *Webster,* at 196 U.S.App. D.C. at 328, n.40, 606 F.2d at 1235 n.40 (emphasis in original). The *Webster* court, therefore, was also guided by the statements of the judicial drafters of this Act.

term have their records cleared and all their civil rights restored." *Hearings on S. 1114 and S. 2609 Before a Subcommittee of the Senate Committee of the Judiciary,* 81st Cong., 1st Sess. 7, at 14 (1949) (Hearings). To that end, "[w]hen the [Youth Correction] Division turns them out ahead of their maximum sentence, this law blots out their sentence and lets them go *without any stigma on their life." Id.* at 19 (emphasis supplied). Likewise, Chief Judge John J. Parker of the United States Court of Appeals for the Fourth Circuit, Chairman of the Committee, testified that "if the youth offender is reclaimed   .   .   ., they can strike out the sentence imposed on him and completely set aside his conviction so that he will not have a criminal record staring him in the face." *Id.* at 45. Judge Parker further indicated that the Act fulfilled the duty, which is owed to the youth of this country, "of throwing the protection of the law around them and reclaiming them to useful lives in society." *Id.* at 49.[6]

Chief Judge Orie L. Phillips of the United States Court of Appeals for the Tenth Circuit also emphasized this point, stressing that "the act does provide for the *wiping out of the conviction* if the youth is discharged, rehabilitated and behaves himself after his period of supervision. The purpose of that is to help him get a job and keep him from having to be turned down by a prospective employer because of the fact that he has had a conviction." *Id.* at 70 (emphasis supplied).[7]

Given the manifest intentions of the Act, it is untenable to suggest that Congress desired no form of record expungement. Congress was surely aware that the mere issuance of a certificate, as provided for in section 5021, declaring that the individual's youthful conviction had been "set aside" would be an inadequate means of removing the scar of that conviction from the wary and often denunciatory collective eye of society, and particularly the prospective employer. The removal of that conviction record from the public's view is the only realistic means for effectuating the Act's clear intentions.

But the United States Attorney maintains that a reading of section 5021 as an expungement remedy would vitiate the need for a certificate, and is therefore contrary to the express provision of such certificate. We feel that this analysis is unsound. The issuance of the certificate does not lose importance merely because the individual's conviction record has been expunged.

[A]s a practical matter, the issuance of a certificate may be as necessary to an offender whose record has been expunged as it is to one whose record has been perpetuated. Expungement is an effective remedy, but it cannot erase all which has preceded it. While official records may be purged, other references to the fact of conviction, such as newspaper files or credit records, remain intact   .   .   .

---

**6.** Judge Charles C. Wyche, Western District of South Carolina, while not one of the drafters of the Act, stated in response to a letter by Senator Pat McCarran, Chairman of the Senate Judiciary Committee, that "a boy who makes one mistake should be permanently forgiven that mistake if his subsequent conduct indicates that he has changed his behavior. One blot on his record may cause him great harm when he applies for a position in later years." *Hearings,* at 117.

**7.** As the United States Attorney points out, Judge Phillips concluded his statement by remarking that the Act "does not entirely remove the difficulty but [the youth offender] can say to the prospective employer, 'I have gone through this thing. They think I am rehabilitated and they have given me this clearance

and I think I am rehabilitated and can make good.' " *Hearings,* at 70. The United States Attorney's interpretation of this statement as recognition by Judge Phillips that records of conviction would be maintained by law enforcement agencies and courts and therefore the youth would have to explain the set aside and show his certificate to a potential employer, does not necessarily follow. It is just as possible that "[t]he difficulty referred to   .   . stem[s] from common community knowledge of the youth's criminal past whether or not the records have been expunged." Note, *Expungement of Criminal Records Under the Youth Corrections Act,* 62 Iowa L.Rev. 547, 562 n.121 (1976). Reading the entire text of Judge Phillips' statement as a whole, this latter interpretation is far more plausible.

Thus, the issue of a prior record may be raised by, for example, an employer who somehow obtained information concerning the event, in which case the certificate would be evidence of the eradication of the conviction. For that reason, if for none other, the provision which contemplates the issuance of such a certificate is as consistent with a construction of the Act favoring expungement as it is with one which assumes the perpetuation of conviction records.

*Webster,* 196 U.S.App.D.C. at 326, 606 F.2d at 1233 (footnote omitted). There are also other significant reasons for providing a youthful offender with a set aside certificate, even though his or her conviction record has been expunged. As has been suggested by at least one commentator, discrimination and stigma may occur despite expungement due to community memory. The certificate may aid the youth offender in showing the surrounding citizenry that rehabilitation has occurred, and that the legal system has recognized this. The certificate is also useful in making the individual aware that the record has been eradicated. Perhaps most importantly

the purpose of the provision may have been to put into the possession of the youth a symbolic token of forgiveness, trust, and confidence that would serve as a reminder of the benevolence of the government and its sincere wish that the youth not again engage in crime . . . Indeed, self-recrimination and feelings of worthlessness can be a major obstacle to the successful rehabilitation of a youthful offender. The purpose for issuing a certificate might have been to help counteract those feelings.

Note, *Expungement of Criminal Records Under the Youth Corrections Act,* 62 Iowa L.Rev. 547, 564–65 (1976) (footnote omit-

ted); *see Webster,* 196 U.S.App.D.C. at 326 n.20, 606 F.2d at 1233 n.20. Therefore, the fact that today's opinion interprets section 5021 as providing an expungement remedy does not contravene section 5021's issuance of a certificate.

## II.

Although the *Webster* court interpreted section 5021 as an implicit expungement provision, it did not apply the expungement remedy to the arrest record. *Webster,* 196 U.S.App.D.C. at 323, 606 F.2d at 1230. The *Webster* court, despite recognizing that the expungement of arrest records would further the purpose of section 5021, chose to read the phrase "set aside the conviction" very literally.[8] While this Court has derived considerable guidance from the *Webster* decision, we find no legal or logical reason for interpreting the word "conviction" so narrowly as to exclude the arrest record from the expungement remedy, and we must therefore part company with *Webster* on this point.

Federal and state courts have often recognized that the word "conviction" is of equivocal meaning. In *United States v. Cody,* 529 F.2d 564 (8th Cir. 1976) the court stated that what constitutes a conviction "varies according to the purpose for which its definition is sought." *Id.* at 566 n.3. The Court of Appeals for the State of New York has noted that the term "conviction" has "varying meanings, even in the same statute,"[9] and that the courts are free to look for the legislative intent in determining the word's proper definition. *People v. Fabian,* 192 N.Y. 443, 449, 85 N.E. 672, 674 (1908); *see DeVeau v. Braisted,* 5 N.Y.2d 236, 242, 183 N.Y.S.2d 793, 797, 157 N.E.2d 165, 168 (1959); *Richetti v. New York State*

---

**8.** It is noteworthy that while this Court has no precedent from the Third Circuit which it must follow, the D.C. Circuit was following its prior precedent set in *Stevenson v. United States,* 127 U.S.App.D.C. 43, 46, 380 F.2d 590, 593 (D.C. Cir.), *cert. denied,* 389 U.S. 962, 88 S.Ct. 347, 19 L.Ed.2d 375 (1967), which commanded a very literal reading of the term "conviction" —one which probably would not include the

youth's arrest record. Perhaps a reluctance to overturn *Stevenson* accounts for *Webster's* narrow treatment of the term "conviction" as opposed to its expansive treatment of the phrase "set aside."

**9.** Today's decision interprets the word "conviction" solely within § 5021 of the Act.

*Board of Parole*, 300 N.Y. 357, 360, 90 N.E.2d 893, 895 (1950).[10]

■ We have noted repeatedly that the Act was intended to eliminate the social and economic disabilities which accompany a criminal record. These same disabilities exist even when an individual has only an arrest blotting his or her record: [11]

Information denominated a record of arrest, if it becomes known, may subject an individual to serious difficulties. Even if no direct economic loss is involved, the injury to an individual's reputation may be substantial. Economic losses themselves may be both direct and serious. Opportunities for schooling, employment, or professional licenses may be restricted or nonexistent as a consequence of the mere fact of an arrest, even if followed by acquittal or complete exoneration of the charges involved. An arrest record may be used by the police in determining whether subsequently to arrest the individual concerned, or whether to exercise their discretion to bring formal charges against an individual already arrested. Arrest records have been used

in deciding whether to allow a defendant to present his story without impeachment by prior convictions, and as a basis for denying release prior to trial or an appeal; or they may be considered by a judge in determining the sentence to be given a convicted offender.

*Menard v. Mitchell*, 139 U.S.App.D.C. 113, 117–18, 430 F.2d 486, 490–91 (D.C. Cir. 1970) (footnotes omitted); *see generally, Utz v. Cullinane*, 172 U.S.App.D.C. 67, 520 F.2d 467 (D.C. Cir. 1975); 46 A.L.R.3d 900, 906 (1978). Moreover, we discern no intention of Congress to distinguish the youth's arrest record from his or her record of conviction. Only by applying a comprehensive definition to the word "conviction" in section 5021, one which incorporates all of the elements of the prosecution, will the set aside/expungement provision serve the legislative purpose by providing the youth offender a clean slate and a fresh start in life. We therefore hold that the word "conviction", as used in section 5021, refers to the entire record of the youthful offender's criminal episode, from the arrest to the sentence.[12] We are of the view that a

10. Even courts which have not explicitly addressed this issue have in actuality looked to the intent of a particular statute in order to derive a definition for the word "conviction." *See, e. g., Qureshi v. Immigration & N. S. Dept. of J. of United States*, 519 F.2d 1174, 1175–76 (5th Cir. 1975) (looks to Congressional intent of "conviction" in 18 U.S.C. § 1251(a)(5)); *Zabanazad v. Rosenberg*, 306 F.2d 861, 861–62 (9th Cir. 1962) (determines that a violation of § 11530 of the California Health and Safety Code is a "conviction", and therefore warrants deportation); *Postma v. International Bro. of Teamsters, Etc., Local 294*, 229 F.Supp. 655, 658 (N.D.N.Y.), *aff'd*, 337 F.2d 609 (2nd Cir. 1964) (construes the word "conviction" as used in 29 U.S.C. § 504); *United States v. Lee*, 227 F.Supp. 450, 452 (D.N.D.1964) (found a court-martial conviction to fall within the ambit of the term "conviction" as used in 15 U.S.C. § 902(e)).

11. The *Webster* court also noted that only by interpreting the "set aside" language of § 5021 as an expungement provision would the ex-offender be alleviated from the harsh burden of having to make a "Hobson's choice":

if, when asked about a conviction record, he answers in the affirmative, he will probably be denied employment despite the "clean slate" the Youth Corrections Act promised

him in return for good behavior; yet if he denies the existence of any such record he will be faced with the likelihood that—should the employer double-check, as many of them do—he will be denied both employment and an opportunity to explain because of the putative employer's feeling that one who misrepresents his past cannot be trusted.

*Webster*, 196 U.S.App.D.C. at 333 n.52, 606 F.2d at 1240 n.52. This point is well taken. However, a similarly adverse situation exists when the arrest record remains after the expungement of the record of conviction. In such an instance, should the prospective employer query whether the ex-offender had ever been arrested the individual would have no choice but to answer "yes", and then face the inevitable next question: "What happened after the arrest?" The youth could not answer that the charge was dismissed or that he or she was acquitted because that did not happen. And a truthful reply—that the conviction was expunged ("here is my certificate to prove it") —would leave the youth in the same situation as the one *Webster* speaks of: probably without a job.

12. At least three other district courts have issued expungement orders pursuant to § 5021. In all of those cases, the *arrest record* was also

broad definition of the word "conviction" is most compatible with the purpose of the Youth Corrections Act.

## III.

The Administrative Office also urges that Henderson's criminal records may be expunged pursuant to this Court's inherent equitable powers.

It is well settled "that a court may order the expungement of records, including arrest records, when that remedy is necessary and appropriate in order to preserve basic legal rights." *Sullivan v. Murphy*, 156 U.S.App.D.C. 28, 58, 478 F.2d 938, 968 (D.C. Cir.), *cert. denied*, 414 U.S. 880, 94 S.Ct. 162, 38 L.Ed.2d 125 (1973); *see United States v. McMains*, 540 F.2d at 389; *Chastain v. Kelley*, 167 U.S.App.D.C. 11, 14, 510 F.2d 1232, 1235 (D.C. Cir. 1975); *Menard v. Saxbe*, 162 U.S.App.D.C. 284, 290, 498 F.2d 1017, 1023 (D.C. Cir. 1974); *United States v. McLeod*, 385 F.2d 734, 749–50 (5th Cir. 1967). And while most courts agree that the inherent equitable power to expunge "is a narrow one", *United States v. McMains*, 540 F.2d at 390, they are also in accord that the remedy of expungement is "not dependent on express statutory provision." *Menard v. Saxbe*, 162 U.S.App.D.C. at 290, 498 F.2d at 1023. The court's equitable determination to expunge also "involves a balancing of interests; the harm caused to an individual by the existence of any records

must be weighed against the utility to the Government of their maintenance." *Paton v. LaPrade*, 524 F.2d 862, 868 (3rd Cir. 1975). Thus, as a general rule, absent express statutory authority, the expungement remedy should be used only where the particular circumstances of a case warrant it. *See United States v. Linn*, 513 F.2d 925, 927 (10th Cir.), *cert. denied*, 423 U.S. 836, 96 S.Ct. 63, 46 L.Ed.2d 55 (1975); *United States v. Bohr*, 406 F.Supp. 1218, 1219 (E.D. Wis.1976).

With respect to the exercise of the court's inherent power to expunge vis-a-vis section 5021, the court in the *United States v. Glasgow* stated in dictum that "[i]n order to effectuate the purposes of the Youth Corrections Act, the court, under its inherent powers as an Article III court having equitable jurisdiction may, in the appropriate situation, order the expungement and sealing of the offender's records." 389 F.Supp. at 224 n.17.[13] Similarly, Circuit Judge Heaney, in an opinion dissenting from the majority's refusal to expunge a youthful offender's records under section 5021, reasoned that

> doubt as to congressional intent should be resolved in favor of giving district court judges the discretion to expunge the record of youthful offenders. These judges are in the best position to determine whether the broad purposes of the Act will be best served by expunging the record or leaving it as is.

expunged. In *United States v. Blankenship*, No. T–CR–2001 (D.Kan., July 11, 1979) the court "ordered that all recordation relating to defendant's arrest, case files, court records, confinement, parole supervision, and discharge, be expunged from all official records. It is ordered that all court records pertinent to this case be sealed." *Id.* And in *United States v.* [expunged], No. [expunged] (W.D.La., May 3, 1979) the court stated that pursuant to § 5021's expungement remedy "[t]he criminal record is expunged. This erases the conviction for all purposes, together with the charges upon which it was based." *Id.* at 1. The court ordered that "[t]here is expunged from the court records all recordation relating to the charge, arrest, indictment or information, the plea of guilty, and dismissal and discharge." *Id.* at 2. Most recently, Chief Judge Joseph S. Lord, III, of the Eastern District of Pennsylvania, ordered

that the Attorney General of the United States, the United States Attorney for the Eastern District of Pennsylvania, the Federal Bureau of Investigation, and the United States Postal Inspector *remove and expunge all records from their respective criminal files relating to Defendant's arrest and conviction . . . ., and recall all copies and extracts of* said records which may have been forwarded to any Federal, State or local department or agency, or private entity, said recalled records to be removed and expunged . . . *United States v. Cronin*, No. 78–55 (E.D.Pa., Nov. 5, 1979) (emphasis supplied).

**13.** The court in *United States v. Hall* noted the *Glasgow* dictum with approval. 452 F.Supp. at 1013. However, based on the facts of its case, the *Hall* court found that expungement was not justified.

*United States v. McMains*, 540 F.2d at 390 (Heaney, J., dissenting).

■ Given the circumstances surrounding the case at bar, coupled with today's poor economy and the minimal opportunities for gainful employment and employment advancement, this Court would not hesitate to use its inherent equitable power to expunge Henderson's total criminal record. It would be inequitable to allow his criminal record to create another obstacle to decent employment despite his rehabilitation and the Act's contrary intention. Since his arrest for the theft of $100.00 from the mails and his release from probation in 1964, Henderson has had no further adverse involvement with the legal authorities. According to the Probation Department, his subsequent schooling, employment and community service attest to his good standing in society. Henderson is currently a full-time registered nurse, and he works part-time as a deputy sheriff. He has supported many voluntary associations since his conviction in 1962. Yet, despite his showing of complete rehabilitation, diligence in being a productive member of society and the "setting aside" of his only criminal conviction, the existence of a criminal record has prevented him, in the past, from availing himself of several employment opportunities, and it currently prohibits him from involvement in certain areas of nursing which interest him and from obtaining his desired employment as a state trooper. Absent the expungement of his criminal record, Henderson has not enjoyed the benefits intended by the Act.

If called upon to do so, we would grant the requested relief through the exercise of our inherent equitable power in this in-

stance. However, given our holding that section 5021 is an expungement provision, and that it provides expungement of the entire criminal record, from the arrest to the sentence, we need not rely on our inherent equitable powers to furnish the desired remedy.

## IV.

■ Finally, the United States Attorney contends that by reading section 5021 as an expungement provision, the Court will undermine the government's legitimate need to maintain criminal records, which are necessary in order to efficiently conduct future criminal investigations. We recognize this need, but we disagree that the Act's expungement remedy will have a disastrous effect on those investigations. The remedy fashioned by the D.C. Circuit in *Webster* [14] adequately accommodates both the interests of the law enforcement community in record keeping and the youthful offender's interest in freedom from the taint of a criminal conviction. We see no reason why this remedy should not be applied, as well, to the arrest record.

There is need to expand this Court's May 10, 1979 Order. Accordingly, that Order shall be vacated and an appropriate Order consistent with this opinion is simultaneously filed herewith.

## ORDER

COHEN, Senior District Judge.

This matter having come before the Court pursuant to the United States Attorney's motion for reconsideration and vacation of our May 10, 1979 Order, which expunged all records relative to the arrest and

---

**14.** The text of *Webster's* remedy is as follows: The set-aside must be actual: the conviction records must be physically removed from the central criminal files and placed in a separate storage facility not to be opened other than in the course of a bona fide criminal investigation by law enforcement authorities and where necessary for such an investigation. These records may not be used by appellees [F.B.I.] for any other purpose, nor may they be disseminated to anyone, public or private, for any other purpose.

Once notified of the entry of a set-aside order, appellees and their agents will be required to respond in the negative to any and all inquiries concerning the set-aside conviction. Similarly, the ex-offender whose conviction is or has been set aside under section 5021, may legally reply in the negative to any and all inquiries concerning his former conviction.

*Webster*, 196 U.S.App.D.C. at 337, 606 F.2d at 1244 (footnotes omitted).

conviction of Thomas A. Henderson in order to achieve the purposes of the Federal Youth Corrections Act, 18 U.S.C. § 5005–5026; and

It appearing that on August 13, 1962, the sentencing judge, Honorable Thomas M. Madden, deceased, found that Thomas A. Henderson was suitable for sentencing under provisions of the Federal Youth Corrections Act; that imposition of sentence was suspended, and that Thomas A. Henderson was placed on probation for three years; and that Thomas A. Henderson was discharged from probation on December 21, 1964, thereby "setting aside" the conviction pursuant to 18 U.S.C. § 5021; and

This Court having reviewed the entire record and all memoranda submitted by the parties and the *amicus curiae*; and

In view of the intent of the Federal Youth Corrections Act, as set forth in this day's opinion;

It is on this 28th day of December, 1979 ORDERED that this Court's May 10, 1979 Order is hereby vacated; and

It is further ORDERED that all recordation relating to defendant's criminal episode, including the charge, arrest, indictment or information, court proceedings, record of conviction and sentence shall be expunged by physically removing them from the central criminal files of the Federal Bureau of Investigation and all other law enforcement authorities and placed in a separate storage facility which is not to be opened other than in the course of a bona fide criminal investigation by law enforcement authorities, and only where necessary for such an investigation. These records shall not be used by law enforcement authorities for any other purpose, nor may such records be disseminated to anyone, public or private, for any other purpose; and

It is FURTHER ORDERED that the defendant, Thomas A. Henderson, may, and all others must, consider the criminal episode, so expunged, as having never occurred.