# WILLIAM JEROME SMITH *v.* STATE OF MARYLAND

[No. 460, September Term, 1981.]

*Decided February 4, 1982.*

The cause was argued before Morton, Moylan and Moore, JJ.

*Cynthia E. Young, Assigned Public Defender,* for appellant.

*Michael A. Anselmi, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *Jimmy L. Hill, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

MOORE, J., delivered the opinion of the Court.

We are confronted here with an appeal by William Jerome Smith and a cross-appeal by the State. Mr. Smith challenges his convictions of armed robbery and use of a handgun in the commission of a felony on the grounds that he was denied a speedy trial and that the Interstate Agreement on Detainers, Md. Ann. Code, Art. 27, § 616A *et seq.* (1976 Repl. Vol.), was violated. These contentions, we find herein, are without merit, and the judgments of conviction shall be affirmed.

The State, thwarted by the trial court in a pursuit of enhanced punishment under Md. Ann. Code, Art. 27, § 643B (c) (1981 Cum.Supp.), contends that appellant's two previous convictions for armed robbery pursuant to the Federal Youth Corrections Act, 18 U.S.C. § 5010 (1976 Ed.) [1] may be used to invoke the mandatory sentencing provisions of the

---

1. In *Dorszynski v. United States,* 418 U.S. 424, 432 (1974), Chief Justice Burger referred to the Federal Youth Corrections Act as "the most comprehensive federal statute concerned with sentencing." Pointing out that the Act was an outgrowth of recommendations made by the Judicial Conference of the United States in the early 1940s, he added: "The principles and procedures contained in the Conference recommendations were in turn largely based on those developed since 1894 for a system of treatment of young offenders in England, known as the Borstal system."

It applies to offenders between the ages of 18 and 22 and affords trial judges four options in sentencing: (1) Suspend sentence and place on probation; (2) sentence the offender for treatment and supervision at a special youth facility, to be discharged in no more than six years; (3) commit the offender to a youth institution for a term which may exceed six years, up to the maximum authorized by law for the offense; and (4) sentence the offender as an adult. 18 U.S.C. § 5010. "The objective of these options represented a departure from traditional sentencing, and focused primarily on correction and rehabilitation." *Id.* at 433.

Maryland Code, *supra*, even though they were set aside under § 5021 of the FYCA.[2] We disagree and shall affirm the ruling of the trial court.

## I

Appellant was convicted in the Circuit Court for Montgomery County on January 7, 1981, of armed robbery and use of a handgun in the commission of a felony. At sentencing on April 7, 1981, the State offered evidence that he had been twice previously convicted of crimes of violence for which he had served a prior term in a correctional institution.[3] Specifically, the State proffered that appellant was convicted of armed robbery in the District of Columbia on October 4, 1972, and was sentenced to 10 years under the FYCA, 18 U.S.C. § 5010 (c). This conviction was thereafter "set aside" pursuant to 18 U.S.C. § 5021 (a)[4] in April, 1979.

The State also presented evidence that appellant had entered a guilty plea to armed robbery on January 8, 1973, and was sentenced to 10 years under the FYCA, which was likewise set aside pursuant to § 5021 (a) in April, 1979.

---

**2.** Because the State alleges that the trial judge failed to impose the sentence mandated by the Code, this appeal is authorized pursuant to Md. Cts. & Jud. Proc. Code Ann. § 12-302 (c) (2) (1980 Repl. Vol.).

**3.** Pursuant to Rule 734 (c) of the Maryland Rules of Procedure, (1981 Cum.Supp.), the State had, 15 days prior to sentencing, served notice of its intent to seek mandatory punishment under Art. 27, § 643B (c). This section of the Code imposes mandatory enhanced punishment for a third conviction of a crime of violence. It provides as follows:

"(c) *Third conviction of crime of violence.* — Any person who (1) has been convicted on two separate occasions of a crime of violence where the convictions do not arise from a single incident, and (2) has served at least one term of confinement in a correctional institution as a result of a conviction of a crime of violence, shall be sentenced, on being convicted a third time of a crime of violence, to imprisonment for the term allowed by law, but, in any event, not less than 25 years. Neither the sentence nor any part of it may be suspended, and the person shall not be eligible for parole except in accordance with the provisions of Article 31B, § 11."

**4.** 18 U.S.C. § 5021 (a) provides as follows:

"(a) Upon the unconditional discharge by the Commission of a committed youth offender before the expiration of the maximum sentence imposed upon him, the conviction shall be automatically set aside and the Commission shall issue to the youth offender a certificate to that effect."

The trial court (McAuliffe, John F., J.) refused to sentence appellant as a subsequent offender under the Maryland Code, holding that because his convictions had been set aside pursuant to § 5021 (a) of the FYCA, they could not be considered as prior convictions.

## II

The State's appeal, which we shall address first, presents a narrow issue that has not heretofore been considered by the Court of Appeals or this Court. In *Calhoun v. State,* 46 Md. App. 478, 418 A.2d 1241 (1980), *aff'd,* 290 Md. 1, 425 A.2d 1361 (1981), we answered in the affirmative the question of whether a prior conviction under the FYCA would qualify for enhanced punishment under Maryland's crimes of violence statute. The question now before us, not present in *Calhoun,* is whether a conviction under the federal statute, which has been set aside pursuant to its provisions, may nevertheless be considered for purposes of enhanced punishment under Art. 27, § 643B. We think the trial court correctly answered this question in the negative.

In support of its contention that the trial court erred, the State argues that the pivotal question is whether § 5021 (a) expunges a conviction or simply removes "the attendant disabilities of a conviction, *in futuro.*" [5] The decisions of

---

5. In Maryland, statutory authority for expunction is found in Md. Ann. Code, Art. 27, § 735 *et seq.* (Criminal Records) and Art. 27, § 292 (Controlled Dangerous Substances — no prior conviction) (1976 Repl. Vol., 1981 Cum.Supp.). Expunction is defined in § 735 as the effective removal of court or police records from public inspection by obliteration or removal to a separate, secure area to which the public and other persons having no legitimate reason for being there are denied access. Art. 27, § 735 (c) (1) (2). The Court of Appeals has adopted a procedural framework relating to applications or petitions for expungement. *See* Maryland Rules of Procedure, Rule EX1 *et seq.* (1977 Repl. Vol.). Expunction under the general statute covers persons charged with but not actually convicted of a crime, § 737(a). The rules are intended to regulate uniformly the practice and procedure to be followed, making the form of action found in *Doe v. Commander, Wheaton Police Dept.,* 273 Md. 262, 329 A.2d 35 (1974) no longer available. The holding there, however — that an equity court has inherent power to order expunction in an appropriate case, especially where no statutory remedy exists — appears undisturbed. *See generally,* United States v. Henderson, 482 F.Supp. 234 (S.D.N.Y. 1979), where the Court held it was not necessary to rely on its inherent equity power to order expunction because of its holding that § 5021 of the FYCA is an expunction statute.

federal courts interpreting the Act reflect divergent views with respect to whether § 5021 is or is not an expunction statute.[6] An erudite and comprehensive analysis of the cases is contained in *Doe v. Webster,* 606 F.2d 1226 (D.C.Cir. 1979), in an opinion by Harold H. Greene, D.J., sitting by designation.

This Court is inclined to agree with the approach of the United States Court of Appeals for the Fourth Circuit in *United States v. Purgason,* 565 F.2d 1279 (1977). There the government relied heavily upon *United States v. McMains,* 540 F.2d 387 (8th Cir. 1976), in which the Court forcefully rejected a contention that § 5021 was an expunction statute. Writing for the Fourth Circuit in *Purgason,* Senior Circuit Judge Field held *McMains* inapposite because the youth offender there was requesting the Court to expunge the record of the conviction as well as the conviction itself. But Judge Field went on to say, in effect, that whether § 5021 was an expunction statute was beside the mark:

> "We find it unnecessary to decide whether the statute is one of expunction in the broad sense of

6. Federal cases viewing § 5021 of the FYCA as an expunction statute include: Mestre Morera v. U.S. Immigration and Naturalization Service, 462 F.2d 1030 (1st Cir.1972); United States v. Arrington, 618 F.2d 1119 (5th Cir.1980); *cert. denied,* 449 U.S. 1086 (1981); United States v. Fryer, 545 F.2d 11 (6th Cir.1976); *but see,* United States v. Doe, 556 F.2d 391 (6th Cir.1977); United States v. Klusman, 607 F.2d 1331 (10th Cir.1979); United States v. Doe, 496 F.Supp. 650 (D.R.I. 1980); United States v. Henderson, 482 F.Supp. 234 (D.N.J. 1979). The United States Court of Appeals for the Eighth Circuit based its flat rejection of § 5021 as an expunction statute on three bases: Had Congress intended to authorize expunction, it would have manifested that intent with far greater clarity; the certificate issued upon the setting aside of the conviction militates against expunction; and finally, expunction would mean inferring a statutory right where none exists. United States v. McMains, 540 F.2d 387 (8th Cir. 1976). *Accord,* Fite v. Retail Credit Co., 386 F.Supp. 1045 (D.Mont. 1975), *aff'd,* 537 F.2d 384 (9th Cir. 1976); United States v. Hall, 452 F.Supp. 1008 (S.D.N.Y. 1977); United States v. Heller, 435 F.Supp. 955 (N.D. Ohio 1976).

The states generally have had little occasion to construe the statute. Those few that have, favor expunction. The Supreme Court of Illinois held in *People v. Wunnenberg,* 421 N.E.2d 905 (1981) that a defendant's set-aside conviction under § 5021 should have no subsequent repercussions, either criminal or non-criminal; thus, the conviction could not be considered as an aggravating factor in sentencing. *See also,* State v. Pacheo, 588 P.2d 830 (Ariz. 1978); People v. Garcia, 402 N.Y.S.2d 164 (1978); State v. Cummings, 607 S.W.2d 685 (Mo. 1980).

that term for the answer to the present case is found in the plain language of Section 5021 (b) which states that the unconditional discharge from probation 'shall automatically set aside the conviction * * *.' *To us it is clear that a conviction which is set aside by the court is vacated and can have no further operative effect.* Aside from the clarity of the statutory language, such a construction is consistent with the rehabilitative purposes of the Youth Corrections Act which was designed to permit youthful offenders to lead their lives free from the stigma and effects of a felony conviction. Our conclusion accords with that reached by the Sixth Circuit, the only other court of appeals which has had occasion to consider this question. *United States v. Fryer,* 545 F.2d 11 (1976)." (Emphasis added; footnote omitted.)

We reject the State's contention in this case that we must determine whether or not § 5021 is an expunction statute. The statute is abundantly clear: Once a youthful offender has been discharged from probation under § 5021, such discharge "automatically" sets aside the conviction. Arguing against the plain meaning of the statute, the State contends that a federal youth offender should not be permitted to use § 5021 as a shield to prevent enhanced punishment for the commission of a subsequent offense under a recidivist statute such as § 643B.

There is surface appeal to the State's rationale that the fact of rehabilitation of the youth offender as determined under § 5021 is negated by the commission of a subsequent crime. However, Congress has not seen fit to provide that a set-aside conviction is only conditionally set aside. Nor has the General Assembly of Maryland declared that a prior conviction of a crime of violence qualifies for enhanced punishment under Art. 27, § 643B even though set aside under the FCYA.

Therefore, we must reject the State's contention that the effect of § 5021 can be no greater than an executive pardon

which does not preclude enhanced punishment under habitual criminal statutes. *See Carlesi v. New York,* 233 U.S. 51 (1914). *See generally,* Annot., 31 A.L.R.2d 1180 (1953). The short answer here is that although judicial discretion precedes the granting of probation or parole under the FYCA, just as the exercise of executive discretion is involved in the grant or denial of the pardon, the effect of the discharge provided under § 5021 is entirely automatic; there are no statutory provisions that the automatic discharge be contingent in any way upon continued rehabilitative behavior.

## III

When appellant was indicted on March 21, 1980, he was being held in Virginia under an armed robbery indictment in that jurisdiction. He ultimately entered a guilty plea and received a 12-year sentence on May 30, 1980. His trial in Maryland began on January 5, 1981.

Under these circumstances, we perceive no basis for appellant's argument that he was deprived of a speedy trial on constitutional grounds. The first reasonable opportunity Maryland had to bring appellant to trial was after May 30, 1980, the sentencing date in Virginia.[7] Assuming that the clock began to run in June, 1980, the elapsed time between then and the date of trial was slightly in excess of six months. We cannot agree that the threshold of constitutional dimension was crossed in this case. The balancing process of *Barker v. Wingo,* 407 U.S. 514 (1972), has not been triggered.[8]

---

7. As Judge McAuliffe observed in his ruling on the motion to dismiss, any earlier request to the State of Virginia would have been futile. He stated: "[E]arlier request in the experience of this Court and as the record indicates in this case ... would have been of no avail. The law does not require the State to take useless actions and file *seriatim* requests even when they know they are not going to be granted. I suppose one could argue that perhaps an informal request should have been made to borrow him but experience teaches that that is not the way business is done in this tri-state area and that it would have been of no avail and therefore we will not require the State to do a useless act."

8. As the State points out in its brief, the trial below took place within a month after appellant's presence in Maryland was procured.

Appellant's second contention — that the charges should have been dismissed on the ground that he was not tried within the 180-day period specified in the Interstate Agreement on Detainers Act — is also without merit.[9] The provisions of the Act do not become operative until "a person has entered upon a term of imprisonment in a penal or correctional institution of a party state" and has made a written request for "a final disposition" of the charges against him. Art. 27, § 616D (a).

Here, appellant was sentenced for the Virginia conviction on May 30, 1980. A detainer for the Maryland charges was filed on July 3, 1980. The record does not reflect that appellant made any final request for disposition of that detainer. To the contrary, the record before us contains a communication dated August 4, 1980, to the Governor of Virginia from an Assistant Attorney General recommending that the Governor "disapprove the request of the State of Maryland for [appellant's] custody" based upon a request to that effect by appellant himself.[10] The record also contains a letter dated November 25, 1980, from the appellant to the Assistant Attorney General advising him that he waived any objection to Maryland's request for custody.

Appellant argues that the Interstate Detainer Act must be liberally construed. As Chief Judge Gilbert stated for this Court in *Isaacs v. State,* 31 Md. App. 604, 358 A.2d 273, *cert.*

---

**9.** The procedures are set forth in Md. Ann. Code Art. 27, § 616D and F (1976 Repl. Vol.). The former, in pertinent part, provides:

"(a) *Notice of imprisonment and request for disposition; time of trial; continuance; certificate of official having custody.* — Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, *he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: . . ."* (Emphasis added.)

**10.** The letter stated that the basis for the request was the pendency of two cases filed by appellant in the United States District Court for Maryland "which attack the legality of the detainers."

*denied,* 278 Md. 724 (1976), "the phrase 'liberally construed' does not mean that courts are free to bend the legislation [The Interstate Detainer Act] out of shape or to remold it to some other form." *Id.* at 611. We fail to find in this case any request by appellant for "a final disposition" under the Act of the charges against him. We therefore reject his contention that the 180-day period began on May 30, 1980, when appellant was sentenced.

> *Judgment affirmed; costs to be divided by appellant and cross-appellant pursuant to Rule 1082b; appellant's costs not to be reallocated pursuant to Rule 1082f.*