**UNITED STATES of America, Appellee,**

**v.**

**John DOE, Defendant, Appellant.**

**No. 83–1836.**

United States Court of Appeals,
First Circuit.

Argued March 6, 1984.

Decided April 11, 1984.

Michael J. Dissette, with whom Thomas E. Eichman Associates, P.C., Haverford, Pa., was on brief, for defendant, appellant.

Joseph F. Savage, Jr., Asst. U.S. Atty., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before CAMPBELL, Chief Judge, BREYER, Circuit Judge, and GIERBOLINI,* District Judge.

LEVIN H. CAMPBELL, Chief Judge.

In 1978, John Doe pled guilty to two narcotics offenses, and was sentenced to the custody of the Attorney General for a term of six years pursuant to the Federal Youth Corrections Act ("FYCA"). 18 U.S.C. § 5005 *et seq.* Doe obtained an unconditional discharge from the United States Parole Commission in November 1982. This early, unconditional discharge had the effect of "automatically set[ting] aside" his two convictions, and the Parole Commission issued to Doe a certificate to that effect, as it was required to do under section 5021(a) of the FYCA.[1] Doe there-

---

* Of the District of Puerto Rico, sitting by designation.

1. Section 5021(a) provides,

Upon the unconditional discharge by the Commission of a committed youth offender before the expiration of the maximum sentence imposed upon him, the conviction shall be automatically set aside and the Commis-

after petitioned the United States District Court for the District of Massachusetts to have all records of his arrest and conviction "expunged." He now appeals from the district court's refusal to grant that relief.

By "expunged" Doe indicated below that he meant "destroyed," although his counsel has indicated to this court that, while destruction would remain preferable, Doe would rather have the arrest and conviction records sealed and segregated from general police files than have no action taken. Thus, the question before us is whether the FYCA requires the destruction of the arrest and conviction records of Doe, with a collateral question whether, assuming such destruction is not required, Doe is entitled to some more limited remedy such as segregation of these records, in addition to the conviction set-aside and the certificate which he already possesses.[2]

## I.

■ Turning first to the arrest record, we think the district court was clearly correct to refuse to order that it be either destroyed or sealed and segregated. Section 5021(a) says nothing about arrest records: it says that the *conviction* shall be "automatically set aside" and that the Commission shall issue to the offender a certificate to that effect.

To be sure, several district courts, *see, e.g., United States v. Doe*, 496 F.Supp. 650 (D.R.I.1980), have ordered that an arrest record, in addition to the record of conviction, be segregated from the general criminal files and sealed, to be opened only by law enforcement officials in the course of a bona fide investigation. But we do not see how this relief can be granted without rewriting the statute, since the statute makes no reference to arrest records. Doe, moreover, does not suggest that there is authority for eradicating the arrest records of persons who are acquitted or not prosecuted: these records remain in the general

police files. To destroy or segregate the present arrest records would leave a convicted person with a cleaner slate than an arrestee who was never found guilty.

We understand the argument that the rehabilitative purpose of the FYCA will be better accomplished by destroying or segregating arrest records. However, when confronted with the anomalous situation of giving the guilty a cleaner record than others merely accused, and a statute that nowhere mentions arrest records, we feel compelled to conclude that the statute grants no authority relative to arrest records. *Accord Doe v. Webster*, 606 F.2d 1226, 1230 (D.C.Cir.1979). It is the province of Congress, not the courts, to amend the statute.

## II.

We turn next to the question of destroying or at least segregating the record of conviction. Doe would have it destroyed, arguing that nothing short of destruction can guarantee that the information will not be distributed to the detriment of his rehabilitation; he urges that this is particularly so in the computer age because information can often be retrieved with nothing more than an authorization code and the pressing of a button.

■ We start with the statutory language, *see supra* note 1, which, having declared that a discharged youth offender's conviction be "automatically set aside," states, by way of implementation, that a "certificate to that effect" be issued to the offender. Beyond that there is no direction that records be destroyed or, indeed, segregated. While destruction would certainly prevent detrimental dissemination, it is an extremely radical remedy which we are reluctant to infer from a silent statute. Thus, we have little difficulty ruling out destruction of Doe's record of conviction. Not only does society have a legitimate

sion shall issue to the youth offender a certificate to that effect.

**2.** While Doe emphasized destruction of the records below, the lesser alternative of segrega-

tion and sealing was sufficiently raised to make it appropriate for us to deal now with both matters.

need for maintaining accurate records of conviction to further bona fide criminal investigations, there are positions of trust to which accurate knowledge of a person's past might be of critical importance. The statute and legislative history nowhere suggest, let alone advocate, the destruction of court files and dockets, with the attendant blotting out of the historical record. Such destruction has an Orwellian flavor which we find unpalatable in 1984 and which we are confident Congress did not enact into law in 1950.

A more palatable argument can be made that Doe is entitled to have the record of his conviction segregated and sealed as was ordered in *Doe v. Webster*. The question boils down to whether the phrase "set aside" should be construed to mean only elimination of all legal effects flowing from a conviction or, more broadly, to encompass the segregation and sealing of the record. The FYCA was primarily the work of the Judicial Conference and one of its committees, and some of the committee members described the set-aside provision in general terms not inconsistent with segregation and sealing. For example, Chief Judge Laws said in testimony before the Senate Judiciary Committee that "this law blots out their sentence and lets them go without any stigma on their life." *Hearings on S. 1114 and S. 2609 Before a Subcommittee of the Senate Committee on the Judiciary*, 81st Cong., 1st Sess. 19 (1949). Another Committee member, however, Judge Phillips, gave a more specific evaluation of the intended effects. Judge Phillips stated,

> The purpose of [the set-aside provision] is to help him get a job and keep him from having to be turned down by a prospective employer because of the fact that he has had a conviction. It does not entirely remove the difficulty but he can say to the prospective employer, "I have

gone through this thing. They think I am rehabilitated and have given me this clearance and I think I am rehabilitated and can make good."

*Id.* at 70. Judge Phillips thus anticipated that prospective employers would learn of the conviction and that the employee would rely on the certificate to demonstrate that, in the eyes of the law, he had been cleared. It is precisely the type of speech to employers described by Judge Phillips that Doe hopes to render unnecessary: Doe wants the privilege to conceal his prior involvement with the law from prospective employers.

In *Doe v. Webster* the District of Columbia Circuit recognized that Judge Phillips's statement could be read as indicating that the Act did not contemplate segregation and sealing of conviction records, but nonetheless construed the statute as requiring segregation and sealing. Judge Phillips's remarks were discounted as merely addressing problems created by dissemination of information from arrest records, newspaper files, and the like. 606 F.2d at 1236 n. 41.[3]

With all respect, we disagree. Senator Kilgore responded to Judge Phillips's comments by recounting the story of a man who had three job offers from airlines, but could not be hired until his military discharge was changed from dishonorable to honorable. It seems to us, from the comments of Judge Phillips and Senator Kilgore, that the set-aside provision was not contemplated as a method of concealing the fact of conviction from employers but rather as a way of opening up job opportunities to youth offenders in positions which, for reasons of company policy, government regulation, or otherwise, would not be available for ex-convicts. We see nothing in the history, nor in the statute itself, to indicate that the draftsmen contemplated

---

**3.** Of the three circuit courts that have had the specific question of expungement before them, two have found that the FYCA does not require it. *United States v. Doe*, 556 F.2d 391 (6th Cir.1977); *United States v. McMains*, 540 F.2d 387 (8th Cir.1976). Only the District of Columbia Circuit has adopted such an approach.

More recently, in dicta, the Tenth Circuit has indicated that it has already implicitly adopted the District of Columbia Circuit's approach. *Watts v. Hadden*, 651 F.2d 1354, 1373 n. 3 (10th Cir.1981). There are numerous district court cases which go both ways.

sealing off the historical record of conviction. Chief Judge Laws's remarks about removal of "any stigma," and general remarks of others in the same vein, are best understood as figurative. As Judge Laws well knew, there was no way literally to guarantee the absence of "any stigma," since knowledge of a prior brush with the law could often be obtained from secondary sources quite apart from official records. If the draftsmen had meant to direct the sealing of records, an innovative and controversial step, one would have expected them to have said so, especially as sealing suggests the need for further statutory directions concerning when, if ever, and by whom, access may be had to the sealed documents. Judge Laws himself, during another part of the hearing, said only that the Act enabled youth offenders to have "their records cleared *and all their civil rights restored*". *Hearings* at 14 (emphasis supplied). Thus, we read the set-aside provision as eliminating any legal disabilities that might flow from a conviction, but not as helping a youth offender conceal his past or lie to prospective employers.

Our view is strengthened by a passage of Justice Marshall's, written for a unanimous Court, in *Tuten v. United States,* 460 U.S. 660, ——, 103 S.Ct. 1412, 1415, 75 L.Ed.2d 359 (1983):

> Congress recognized that a criminal conviction often carries with it numerous civil and social disabilities. For example, a conviction may result in the loss of the rights to vote, to hold a public office, to serve on a jury, and to practice various occupations and professions. As in this case, a conviction may also make an offender subject to increased penalties for subsequent convictions. Like various state expungement statutes, § 5021 en-

ables an eligible youth offender to reenter society and conduct his life free from the disabilities that accompany criminal conviction.

In *Tuten,* the Court considered whether a conviction which had been set aside could nonetheless serve as a basis for increased penalties for subsequent convictions, and held that it could not. Significantly, the facts of *Tuten,* as well as the examples given by Justice Marshall, present cases of a conviction being used to the legal detriment of the youth offender—cases in which a conviction prevented the offender from fully participating in society. Similarly, in *Mestre Morera v. United States Immigration and Naturalization Service,* 462 F.2d 1030 (1st Cir.1972), this court did not permit a conviction that had been set aside to serve as a basis for deportation of an alien, even though the Immigration and Naturalization Act provides that conviction of certain offenses can serve as a basis for deportation. The theme of *Tuten,* the examples contained therein, and *Mestre Morera,* is that the section 5021 directive setting aside the conviction prevents the fact of conviction from being used to the youth offender's *legal detriment.* This consequence is, of course, greatly beneficial to the youth offender; no more need be read into the language to make it meaningful.

Whether court records showing a discharged youth offender's conviction should also be physically segregated and sealed, so as to be shielded from public knowledge, raises a different question which section 5021 does not address. Even in a day when the distinction is becoming blurred, this is a matter for legislative, not judicial, action.[4]

*Affirmed.*

---

4. Our view that section 5021 does not direct "expungement" of the prior criminal record is strengthened by the Senate's refusal to endorse that remedy for a youth offender in the Criminal Code Reform Act of 1979. In a prepared statement before the Senate Judiciary Committee, John J. Cleary of the Federal Defenders of San Diego, Inc., had urged the Senate to adopt an expungement requirement, citing the recently decided *Doe v. Webster* case. *Hearings on S. 1722 and S. 1723 Before the Senate Committee*

*on the Judiciary,* 96th Cong., 1st Sess.1979. The Committee declined to go along with this recommendation, noting in its report that,

> Section 4031 provides a more effective means of protecting both Federal and individual interests than does expungement, a solution to this problem that has sometimes been suggested. Expungement forces an offender to fabricate explanations for the "holes" in an employment record and may be ineffective in

that supposedly expunged records would surface from secondary sources. *Report of the Senate Committee on the Judiciary accompanying S. 1722.* The Senate bill instead provided, in sections 4031–32, that no person acting under color of federal law could impose a civil disability by reason of a conviction of certain specified offenses and on certain conditions; the bill also made it clear that such convictions could nonetheless be taken into account in certain situations such as admission to the bar of state or federal courts, applications for employment as a law enforcement officer, or federal positions that require security clearances. This Senate bill did not pass the House. The same matter was before the Senate during the first session of the 97th Congress as S. 1630, but did not come to a full floor vote. We understand that the matter is again under consideration, this time in the House, where Congressman Rodino, on November 18, 1983, introduced H.R. 4554 resolving that certain amendments to Title 18 be made, including repeal or modification of the Federal Youth Corrections Act. The matter is currently before the House Subcommittee on Criminal Justice. This subsequent legislative history suggests that Congress does not view section 5021 as an expungement statute. Further, it strongly suggests that many legislators may view "expungement" as a poor idea. Instead, Congress has been struggling to formulate alternative solutions to the problem of how best to mitigate the disabilities accompanying a conviction which has been set aside.