**UNITED STATES of America**

v.

**John DOE, Appellant.**

**No. 92–1218.**

United States Court of Appeals, Third Circuit.

Argued Sept. 14, 1992.

Decided Nov. 24, 1992.

John J. Waldron (argued), Huber & Waldron, Allentown, Pa., for appellant.

Paul L. Gray (argued), Office of U.S. Atty., Philadelphia, Pa., for appellee.

Before STAPLETON, SCIRICA and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

The District Court denied appellant John Doe's Motion for Expungement of the record of his conviction under the Federal Youth Corrections Act (FYCA), 18 U.S.C. § 5005 et. seq. (1976) (repealed 1984); reasoning that § 5021 of the FYCA did not authorize federal courts to expunge criminal records. Because we believe it within the court's power to expunge his records, we will reverse and remand.

### I.

While a college undergraduate student, Doe pleaded guilty to conspiracy to defraud the United States of $8,736.53 in student loan proceeds—a violation of 18 U.S.C. § 371. Specifically, Doe gained access to

his university's computer system, enrolled in classes and gave himself grades and credit for classes he never attended—all while receiving federal financial assistance. He was sentenced to five years probation, conditioned on restitution within three years. Doe made full restitution within the three year period and the court ordered that he be "unconditionally discharged from probation" and that his conviction be "set aside."

He returned to college, graduated with honors in engineering, and was offered a position with the Carolina Power and Light Company. A company security check disclosed Doe's conviction, and that this conviction had been "set aside." Nonetheless, the company withdrew its offer of employment. Doe now works for the GPU Nuclear Corporation. He was recommended by GPU for a Nuclear Regulatory Commission reactor operator's license. The application form for this license inquired whether he had ever been convicted of violating a federal, state, county, or municipal law. He answered in the affirmative and the negative, and attached an explanation expressing his belief that the conviction had been expunged.

■ The NRC's background investigation disclosed that the conviction was still on the government's records; that the conviction was "set-aside;" and that Doe's record is readily accessible to the public. Notwithstanding the criminal record, Doe was granted his operator's license.[1]

Doe filed a Motion for Expungement.[2] In it he indicated that he pleaded guilty believing that his record would be expunged once he completed his probationary period. Doe further contended that, although he has advanced in his career, further advancement is inhibited by the conviction record. The district court denied Doe's motion because no express language in the statute authorizes an expungement.

■ Because this issue raises questions of statutory construction, our review is plenary. *Wheeler v. Heckler*, 787 F.2d 101, 104 (3d. Cir., 1986).

## II.

### A.

We have stated that "it is axiomatic that statutory interpretation properly begins with the language of the statute itself, including all of its parts. There is no need to resort to legislative history unless the statutory language is ambiguous." *Velis v. Kardanis*, 949 F.2d 78, 81 (3d Cir.1991). See also *Sacred Heart Medical Center v. Sullivan*, 958 F.2d 537 (3d Cir.1992). We realize, however, that there are instances where language initially appears plain, but when applied to a particular situation may create an ambiguity. When that happens, the Supreme Court has instructed that "words are inexact tools at best and for that reason there is wisely no rule of law forbidding resort to explanatory legislative history no matter how clear the words may appear on superficial examination." *Harrison v. Northern Trust Company*, 317 U.S. 476, 479, 63 S.Ct. 361, 363, 87 L.Ed. 407 (1943). See also *Association of Westinghouse Employees v. Westinghouse Electric Company*, 348 U.S. 437, 444, 75 S.Ct. 489, 492, 99 L.Ed. 510 (1955) (legislative history should be examined to "see whether that history raises such doubts that the search for meaning should not be limited to the statute itself").

### B.

■ Section 5021 of the FYCA provides:

---

1. Even though Doe received his operator's license, and continues to be employed by GPU Nuclear Corporation, we are satisfied that he has standing to bring his claim. Standing requires "some threatened or actual injury." *Linda R.S. v. Richard D.*, 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973). The continued presence of his conviction could endanger his future career opportunities. See *Paton v. La Prade*, 524 F.2d 862, 898 (3d Cir., 1975).

2. The exact title of the appellant's motion was "Motion for Expungement or in the Alternative to Physically Remove from the Government's Central Criminal Files any and all Documents in the Above-captioned Criminal Information Number and Place them in a Separate Storage Facility with Access Only for Bonafide Criminal Investigations by Law Enforcement Authorities."

(a) Upon the unconditional discharge by the commission of a convicted youth offender before the expiration of the maximum sentence imposed upon him, the conviction shall be automatically *set aside* and the commission shall issue to the youth offender a certificate to that effect.

(b) Where the youth offender has been placed on probation by the court, the court may, in its discretion unconditionally discharge such youth offender from probation prior to the expiration of the maximum period of probation theretofore fixed by the court which discharge shall automatically *set aside* the conviction, and the court shall issue to the youth offender a certificate to that effect.

18 U.S.C. § 5021 (West, 1976). (emphasis added.)

The issue is what "set-aside" means. The district court, while correctly noting that the issue is new to this circuit, reasoned literally that because Congress did not specifically use the word "expungement," they did not intend to empower the district court with such a remedy. We disagree.

■ In our view, the term "set aside" is ambiguous. The statute does not define the term "set aside." Since the statute does not offer a definition, and since the term has no common law connotation of which we are aware, it must be given its ordinary meaning. *Chapman v. United States*, — U.S. —, —, 111 S.Ct. 1919, 1925, 114 L.Ed.2d 524 (1991); *Moskal v. United States*, 498 U.S. 103, — — —, 111 S.Ct. 461, 468–70, 112 L.Ed.2d 449 (1990). Black's Law Dictionary defines "set-aside" as "to reverse, vacate, cancel, annul, or revoke a judgment, order, etc." *Black's Law Dictionary* 1230 (5th ed. 1979). This definition is itself ambiguous since it encompasses the broad range of remedies from a reversal to an annulment. An "annulment" is closely aligned to an "expungement." To "annul" is defined as to reduce to nothing; annihilate; obliterate; to make void or of no effect. To annul a judgment or judicial proceeding

is to deprive it of all force and operation, either ab initio or prospectively as to future transactions. *Id.* at 83. When compared to the definition of the term "expunge" ("to destroy; blot out; obliterate; erase...." *Id.* at 522), the definition of "set aside" seems to encompass an expungement-like remedy. Further adding to the confusion, Webster's Dictionary defines "set aside," in part, as "to annul." *Webster's Dictionary Encyclopedic Edition* 911 (1988 Edition). Because the term "set aside" connotes numerous and varying remedies, we deem it necessary to resort to the legislative history to define it.

We do not agree that if Congress intended "set aside" to be equivalent to "expunge," they would have said so. There is no indication that the drafters sought to distinguish the term "set aside" from "expunge." One court suggested that the term "expunge" had not "gained general currency" when the Act was passed. *Doe v. Webster*, 606 F.2d 1226, 1233 (D.C.Cir. 1979). Black's Law Dictionary did not include a definition of the term "expungement" until 1979. We do not suggest that the term "expungement" did not exist when the Act was written. See ex. *Andrews v. Police Court of Stockton*, 123 P.2d 128, 129 (Cal.App., 1942). In most instances, however, the usage of the term was far removed from the criminal context. See *Temple v. Clinton Trust Co.*, 1 N.J. 219, 62 A.2d 690 (1948) (denied expungement of a portion of an attorney's brief); *People v. Hardy*, 33 Cal.2d 52, 198 P.2d 865 (1948) (testimony expunged from a court record during trial); and *Hesker v. Shaffer*, 394 Ill. 489, 68 N.E.2d 612 (1946) (language expunged from a deed).

Nevertheless, we see no conflict between Congress' intentions in passing the FYCA, the statute's goals and Congress' failure to specifically use the term "expungement." One court, after conducting a "careful review" concluded that no federal statute enacted prior to 1950 utilized the term "expungement." *United States v. Henderson*, 482 F.Supp. 234 at 239 (D.N.J. 1979). In fact, the first federal statute to

use the term "expungement" was enacted in 1966. See 18 U.S.C. § 4251(e) (1966) and 28 U.S.C. § 2901(f) (1966) ("Conviction not to include a final judgment which has been *expunged* by pardon, reversed, set aside, or otherwise rendered nugatory") (emphasis added). We do not believe the mere absence of the word "expungement" indicates any Congressional intent. So, we turn to the legislative history and purposes of this act for help.

### C.

In 1941, the "Committee on Punishment for Crime of the Judicial Conference of Senior Circuit Judges" ("the Judicial Committee") drafted a proposal giving special consideration to young offenders and submitted the proposal to Congress. This proposed legislation was the precursor of the FYCA.

The FYCA was designed to:

make available for the discretionary use of the Federal Judges a system for the sentencing and treatment of persons under 22 years of age who have been convicted of crime in the United States courts that will promote the rehabilitation of those who in the opinion of the sentencing judge show promise of becoming useful citizens, and so, will avoid the degenerative and needless transformation of many of these young persons into habitual criminals.

H.R. Report No. 2979, 81st Cong., 2d Sess., at 3938 (1950) ("House Committee Report"). This proposed legislation contained a provision which provided that:

Upon unconditional discharge by the authority [Youth Authority Division] of a youth offender before the expiration of six years from the date of his conviction, where an original sentence was not imposed on such youth offenders and upon the unconditional discharge by the authority of a youth offender, upon whom an original sentence was imposed, before the expiration of the original sentence, the conviction shall be automatically set aside and held for naught, and the Authority shall issue a certificate to that effect.

Committee on Punishment for Crime of the Judicial Conference of Senior Circuit Judges, *Proposed Draft of An Act Recommended to Provide A Correctional System of Adult and Youth Offenders* § 13, at 20 (1942).

Congress first considered the Committee's proposal in 1949. Several weeks before the Senate Judiciary Committee hearings, Senator Kilgore, Chairman of the Sub-committee and sponsor of the legislation, wrote to various federal district court judges seeking their input on the proposed legislation. Their response provides the first substantial evidence that "set aside" meant the equivalent of our present day term "expungement." Judge John Paul of Virginia opined that the "set aside" provision would "wipe out" a conviction and expressed some concern. *Hearings on SB1141 and SB2609 before a Sub-committee of the Senate Judiciary Committee* 81st Cong. 1st Sess. at 110 (1949) (hereinafter, "Senate Hearings"). When commenting on the proposed "set aside" provision, Judge Charles Wyche of the Western District of South Carolina stated that:

... another feature of this act which appeals to me is the provision that a sentence shall be automatically set aside and held for naught upon the unconditional discharge of the youth offender, and that the authority shall issue to the youngster a certificate to that effect.

I believe that a boy who makes one mistake should be permanently forgiven that mistake if his subsequent conduct indicates that he has changed his behavior. One blot on his record may cause him great harm when he applies for a position in later years.

*Senate Hearings* at 117. These two judges, while not drafters of the legislation, interpreted for Congress the "set aside" provision to mean an expungement of a youth's record.

When the FYCA appeared before the House of Representatives, the "held for naught" language had been excised and replaced with weaker language which would have equated the certificate with a pardon. *Judicial Committee Report* at

18–19. During the 1949 hearings, the weaker "pardon" language was removed. Chief Judge Orie L. Phillips of the Tenth Circuit Court of Appeals and a member of the Act's drafting committee had submitted a list of "technical amendments" which excised the "pardon" language from § 5021 and inserted the term "set aside." *Senate Hearings* at 71. These amendments were adopted and passed without debate.

When Congress deleted the weaker remedy, the equivalent of a pardon which leaves one with a conviction, Congress evidenced its intent that "set aside" was to be at least equivalent to a reversal, leaving one without a criminal conviction. The modification that removed the term "held for naught" may be susceptible of different interpretations. For example, was the term removed because it was redundant? Or, was it removed because Congress did not intend the conviction to be completely "naught?" We are reluctant to infer too much from this, but believe the first explanation is more sensible because it is patent that Congress did intend to give youths liberal benefits. As one court noted:

> While the legislative history offers little guidance as to the reasoning behind the drafter's choice of terminology, it is crystal clear in one respect: they intended to give youthful ex-offenders a fresh start, free from the strain of criminal conviction and an opportunity to clean their slates to afford them a second chance, in terms of both jobs and standing in the community.

*Doe v. Webster*, 606 F.2d 1226, 1234 (D.C.Cir., 1979). The Federal Youth Corrections Act had strong rehabilitative purposes. The District of Columbia Court of Appeals, in *Webster*, reasoned that:

> It is clear that if these [rehabilitative] purposes of the Act are to be effectuated, the set-aside provision must be accorded a liberal construction which allows the rehabilitated youthful offender a meaningful fresh start by protecting him from those "stigma" consequences of his conviction which impede his reintegration into society, as distinguished from an interpretation which grudgingly focuses only on the removal of legal disa-

bilities which are of more limited value to the youthful ex-offender seeking to reestablish a useful, productive and law-abiding life.

606 F.2d at 1238.

A number of other witnesses testified before the Senate Judiciary Committee on this proposed bill. Because some witnesses were actually the sponsors and drafters of the legislation, their views and comments should be considered of "particular importance." *Dorszynski v. United States*, 418 U.S. 424, 437, 94 S.Ct. 3042, 3050, 41 L.Ed.2d 855 (1974). Chief Judge Bolitha Laws of the D.C. Circuit Court was the first to testify. He stated that:

> Committed youth offenders who earn their final discharge before the end of their maximum term *have their records cleared* and all their civil rights restored
>
> . . .
>
> When the division turns them out ahead of their maximum sentence, this blots out their sentence and lets them go without any stigma on their life.

*Senate Hearings* at 19. (emphasis added.)

Chief Judge Parker of the Fourth Circuit Court of Appeals, the principal drafter of the proposed legislation and Chairman of the Committee, testified that:

> There is one feature of this bill which is very salutary and that is that if the youth offender is reclaimed in the opinion of the board and they decide to release him, they can strike out the sentence imposed upon him and completely set aside his conviction so that he will not have a criminal record staring him in the face.

*Senate Hearings* at 45.

The testimony of Judge Phillips is more equivocal. He testified that:

> Well, of course, the act does provide for the wiping out of the conviction if the youth is discharged, rehabilitated and behaves himself after his period of supervision. The purpose of that is to help him get a job and keep him from having to be turned down by a prospective employer because of the fact that he has had a conviction. It does not entirely remove

the difficulty, but he can say to the prospective employer, "I have gone through this thing. They think I am rehabilitated and they have given me this clearance and I think I am rehabilitated and can make good."

It [§ 5021] will be a great aid in restoring him to a normal situation in society so that he can go out and get work. There is nothing more important when a man gets out than that he get a good and useful job.

*Senate Hearings* at 70. Judge Phillips' phrase "it does not entirely remove the difficulty" may be evidence that he felt it may be interpreted as something less than total expungement. Judge Laws indicated that the records would be cleared thereby removing stigma; Judge Parker stated that there would not be any remaining criminal records; and Judge Phillips testified that the conviction would be "wiped out." When reviewed together, however, these statements are complementary and consistent, and point to a definition of "set aside" more liberal than merely the equivalent of a reversal.

The FYCA was amended in 1961 to include those youths who were committed to the Youth Division as well as those on probation. The amendment's sponsor, Senator Dodd, stated that:

I think section 5021 represents an important factor in the treatment of youthful offenders. It provides an additional incentive for maintaining good behavior by holding out to the youth an opportunity to clear his record ... For those who demonstrate a willingness to help themselves, every reasonable opportunity is afforded to assist them in making a new start.

107 Cong.Rec. 8709 (1961).

The testimony of the FYCA's drafters evidences their concern that a youth, sentenced under the FYCA, receive a new start and that the criminal record not impede his or her development as a productive member of society. The rehabilitative purposes of this statute are best served by an expungement of a qualified youth's criminal record. We believe that is what Congress meant.

It is most consistent with the goals of the Act to suggest that the FYCA's drafters and Congress desired some form of expungement in the Act. We believe expungement can be inferred from § 5021 and will facilitate the rehabilitative purposes of the FYCA. As the district court in *Henderson* noted:

.... no valid reason exists why [an] individual should be scarred for the rest of his or her life with a police record and a criminal conviction. Such is a source of social embarrassment, lack of employment opportunity, and psychological harm not within the intent of the Act. 482 F.Supp. at 238.

Before being repealed in 1984, FYCA § 5021 precipitated some litigation, and courts addressing the issue are divided. Some suggest that § 5021 should be read liberally as an expungement provision to satisfy the legislative purposes of the statute. See ex. *United States v. Fryer*, 545 F.2d 11, 13 (6th Cir., 1976); *Doe v. Webster*, 606 F.2d 1226 (D.C.Cir., 1979); *United States v. Doe*, 730 F.2d 1529 (D.C.Cir., 1984); *United States v. Klusman*, 607 F.2d 1331 (10th Cir., 1979) (dictum); *Lawary v. United States*, 599 F.2d 218 (7th Cir., 1979). Others say § 5021 leaves federal courts powerless to expunge records. See ex. *United States v. Doe*, 732 F.2d 229 (1st Cir., 1984); *United States v. McMains*, 540 F.2d 387 (8th Cir., 1976); *Fite v. Retail Credit Company*, 386 F.Supp. 1045, 1047 (D.Mont., 1975) aff'd, 537 F.2d 384 (9th Cir., 1976).

Courts determining that § 5021 does not provide for an expungement of records reasoned literally that if Congress had intended such a remedy, they would have used the term "expunge." Illustrating this reasoning is the Eighth Circuit Court of Appeals' decision in *United States v. McMains* (supra.):

.·.. the Act does not authorize expunction of the record of a conviction which has been set aside pursuant to section 5021. First, the language of section 5021 does not plainly provide for record

expunction. We are confident that had Congress intended to authorize expunction, it would have manifested that intent with far greater clarity as it had done on other occasions. See 21 U.S.C. § 844(b)(2). Second, the fact that section 5021 provides for the issuance of a certificate to the offender upon the setting aside of his conviction militates against a construction favoring expunction. Had Congress intended to provide for complete eradication of the offender's records, such a certificate would seem unnecessary. Third, it would be incongruous to infer a statutory right to expunge a conviction when there is no statutory right, in most cases, to expunge the record of an arrest that does not result in a prosecution.

540 F.2d at 389. We believe Congress intended the Act to be read liberally, not parsed literally.

The court in *McMains* relied on 21 U.S.C. § 844(b)(2) to support its contention that since Congress specifically included the term "expungement" in that statute, such a term should not be read into the FYCA. We are not persuaded. 21 U.S.C. § 844(b)(2), providing expungement of first time drug offenders records was enacted by Congress in 1970. That Congress used the term in 1970 has little bearing on what they intended 21 years earlier. Moreover, one can argue that surely a Congress could not have intended that drug offenders receive better treatment than youths sentenced under the FYCA. Under *McMains'* reasoning, a drug offender's criminal record can be completely expunged whereas a youthful offender's cannot. We believe that Congress never intended such an anomalous result, especially in light of the liberal policy considerations of the FYCA.

The government contends that the "set aside" provision acts only to remove unspecified "legal impediments" of a conviction. We find this interpretation too cramped and, moreover, contradicts the more expansive construction we find from the legislative history. Significantly, it is clear from the facts of this case that a youthful offender cannot be sufficiently purged of his criminal stigma by a simple notation that his conviction has been "set aside." Doe has already lost one job and reasonably fears future repercussions. One court has categorized this as:

> unrealistic thirty years ago when the act was passed, and is even more unrealistic now, in light of a heightened sense of individual privacy, and a modern technology which has made possible computerized information storage and retrieval and its liberal use by potential employers.

*Webster*, 606 F.2d at 1238–1239. We agree. Given the employment concerns enunciated by the drafters, § 5021 contemplates "more than a technical erasure." *Mestre Morera v. U.S. Immigration and Naturalization Servs.*, 462 F.2d 1030 at 1032 (1972). Anything less than the expungement of the record leaves a youthful offender only "slightly better off than if his conviction had never been set aside at all." *Webster*, 606 F.2d at 1240.

## III.

Doe is rehabilitated from his misconduct. He has graduated from the university with honors; has secured and continues to be employed in a challenging field, and has married and started a family. He has never again been arrested, and has no other criminal record.

We find the reasoning of the court in *Doe v. Webster* persuasive that:

> Once a district court issues its order setting aside a conviction under section 5021 and transmits that order [to the appropriate record keepers] it will not be sufficient ... merely to enter the words "set aside" on its records.

*Webster*, 606 F.2d at 1244. We hold that when Congress empowered the district court to "set aside" a youthful offender's conviction, it meant a complete expungement, and that:

> The set aside must be actual; the conviction records must be physically removed from the ... criminal files and placed in a separate storage facility not to be opened other than in the course of a bona fide criminal investigation by law en-

forcement authorities and where necessary for such an investigation. These records may not be used ... for any other purpose, nor may they be disseminated to anyone, public or private, for any other purpose.

*Webster*, 606 F.2d at 1244.

■ We further hold that any record keeper notified that the youthful offender's conviction has been set aside shall respond in the negative to any and all inquiries into the expunged conviction and that the youthful offender whose conviction has been thus expunged under section 5021 may legally answer in the negative to any inquiry about the expunged conviction. *Webster*, 606 F.2d at 1244–45.

We will reverse and remand with instructions that the district court order Doe's conviction record expunged.

STAPLETON, Circuit Judge, dissenting:

When Congress adopted the Youth Corrections Act, courts had been setting aside convictions for centuries, and I believe the concept of setting aside has a well-understood meaning in the law. When a conviction is set aside, it is rendered without legal effect. So far as I have been able to ascertain, the setting aside of a conviction has never been thought to require the destruction or isolation of the court records evidencing its original entry. I think it reasonable to infer that Congress had this common understanding of "set aside" in mind when it enacted the YCA. Moreover, as Judge Campbell persuasively demonstrates in his opinion for the court in *United States v. Doe*, 732 F.2d 229 (1st Cir. 1984), the legislative history supports this view of the statute. For the reasons set forth in that opinion, I respectfully dissent.